[No. S043131. Aug. 26, 1999.]

In re RONALD LEE SANDERS on Habeas Corpus.

COUNSEL

Faegre & Benson, Robert L. Collins, Mary Cullen Yeager, Eric E. Jorstad; and Nina Rivkind for Petitioner.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Jane N. Kirkland, Deputy Attorneys General, for Respondent.

OPINION

**WERDEGAR, J.**—Our recent decisions in *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311] (*Robbins*) and *In re Gallego* (1998) 18 Cal.4th 825 [77 Cal.Rptr.2d 132, 959 P.2d 290] (*Gallego*) explained many aspects of the timeliness rules applicable to petitions for writs of habeas corpus. In general, those decisions explain that such petitions should be filed without substantial delay, or good cause must be shown for the delay. In this case, counsel representing a capital defendant failed to conduct a reasonable investigation of potentially meritorious claims in the face of triggering facts, leading to a substantial delay in the presentation of the defendant's legal claims by the defendant's subsequent attorney. We must thus decide whether prior counsel's inaction is relevant to a determination of whether petitioner has stated good cause for the delay. On the particular facts of this case, we conclude that when, as here, an attorney representing a capital defendant essentially abandons his client and fails, in the face of triggering facts, to conduct an investigation in order to determine whether there exist potentially meritorious claims, such abandonment constitutes good cause for substantial delay in the presentation of potentially meritorious claims by subsequent counsel.[1]

---

[1]By so concluding, we need not reach the further, and more difficult, question whether some action or inaction by counsel short of the abandonment that occurred here could also constitute good cause under the Supreme Court Policies Regarding Cases Arising From Judgments of Death (hereafter Supreme Court Policies).

For the convenience of the bench and bar, I note that five members of the court (the Chief Justice, Justices Mosk, Kennard, Chin and I) agree that abandonment by counsel can constitute good cause under our Supreme Court Policies excusing a substantial delay in filing a petition for a writ of habeas corpus in a capital case. Four members of the court (the Chief Justice, Justices Mosk, Chin and I) agree that abandonment adequately has been pleaded in this case. In addition, five members of the court (the Chief Justice, Justices Mosk, Chin, Brown and I), for different reasons, agree petitioner's claims should not be denied as untimely.

## Background

Because we are concerned only with the procedural aspects of this case, the facts of petitioner's crime are not relevant. Suffice it to say, petitioner Ronald Lee Sanders and one John Cebreros committed a home invasion robbery of Dale Boender, a drug dealer, and his girlfriend, Janice Allen. Both victims were bound and blindfolded and struck on the head with a blunt object. Boender survived, but Allen died.

Petitioner was convicted in Kern County Superior Court of first degree murder, attempted murder, robbery, burglary and attempted robbery. The jury also found true two allegations that petitioner was armed with a firearm, as well as four special-circumstance allegations: the murder was committed while petitioner was engaged in the commission or the attempted commission of the robbery and burglary (Pen. Code, § 190.2, former subd. (a)(17)(i) & (vii), see now subd. (a)(17)(A) & (G));[2] the victim was intentionally killed to prevent her testimony in a criminal proceeding (§ 190.2, subd. (a)(10)); and the murder was especially heinous, atrocious and cruel (§ 190.2, subd. (a)(14)). The jury set the penalty at death. This court appointed counsel to represent petitioner. Thereafter, on appeal, this court set aside two of the four special-circumstance findings, but otherwise affirmed the judgment in its entirety. (*People* v. *Sanders* (1990) 51 Cal.3d 471 [273 Cal.Rptr. 537, 797 P.2d 561].)

Still represented by counsel appointed by this court, petitioner filed a petition for a writ of certiorari that was denied by the United States Supreme Court on May 28, 1991. (*Sanders* v. *California* (1991) 500 U.S. 948, 949 [111 S.Ct. 2249, 2250, 114 L.Ed.2d 490].) Counsel did not file a petition for a writ of habeas corpus in this court. Thereafter, the People obtained an order from the superior court authorizing petitioner's execution. (§ 1227.) Petitioner successfully moved in federal court for a stay of the proceedings and appointment of new counsel. Newly appointed counsel subsequently filed a petition for a writ of habeas corpus in federal court on December 20, 1993. (*Sanders* v. *Vasquez*, CV-F-92-5471-REC-P.) After the People moved successfully to dismiss the petition for failure to exhaust state remedies, petitioner filed a petition for a writ of habeas corpus with this court on November 7, 1994. In his informal response (see Cal. Rules of Court, rule 60), the Attorney General claimed, inter alia, that all of petitioner's claims were untimely and should be denied for that reason.

On June 13, 1996, we ordered the Director of Corrections to show cause "(1) whether, and under what circumstances, ineffective assistance of counsel may explain or excuse delay in presentation of a claim on habeas corpus

---

[2]All further statutory references are to the Penal Code unless otherwise stated.

(see In re Clark (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729]; Supreme Ct. Policies Regarding Cases Arising From Judgments of Death, Policy 3, stds. 1-1, 1-2, 1-3), (2) whether counsel appointed to represent petitioner in his automatic appeal rendered ineffective assistance as to any claim set forth in the instant petition for writ of habeas corpus by failing to investigate and present that claim at an earlier time, and (3) whether this court must therefore determine whether any such claim states a prima facie case for relief on the merits. (See People v. Miranda (1987) 44 Cal.3d 57, 119, fn. 37 [241 Cal.Rptr. 594, 744 P.2d 1127]; In re Hochberg (1970) 2 Cal.3d 870, 875, fn. 4 [87 Cal.Rptr. 681, 471 P.2d 1].)"

DISCUSSION

## A. *Introduction*

As explained recently in *Robbins, supra,* 18 Cal.4th 770, we insist a litigant mounting a collateral challenge to a final criminal judgment do so in a timely fashion. By requiring that such challenges be made reasonably promptly, we vindicate society's interest in the finality of its criminal judgments, as well as the public's interest "in the orderly and reasonably prompt implementation of its laws." (*Id.* at p. 778.) Such timeliness rules serve other salutary interests as well. Requiring a prisoner to file his or her challenge promptly helps ensure that possibly vital evidence will not be lost through the passage of time or the fading of memories. In addition, we cannot overestimate the value of the psychological repose that may come for the victim, or the surviving family and friends of the victim, generated by the knowledge the ordeal is finally over. Accordingly, we enforce time limits on the filing of petitions for writs of habeas corpus in noncapital cases (see, e.g., *In re Swain* (1949) 34 Cal.2d 300, 304 [209 P.2d 793]), as well as in cases in which the death penalty has been imposed (*Robbins, supra,* 18 Cal.4th 770; *Gallego, supra,* 18 Cal.4th 825; *In re Clark* (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*)).

The manifest need for time limits on collateral attacks on criminal judgments, however, must be tempered with the knowledge that mistakes in the criminal justice system are sometimes made. Despite the substantive and procedural protections afforded those accused of committing crimes, the basic charters governing our society wisely hold open a final possibility for prisoners to prove their convictions were obtained unjustly. (U.S. Const., art. I, § 9, cl. 2 [limiting federal government's power to suspend writ of habeas corpus]; Cal. Const., art. I, § 11 [limiting state government's power to suspend writ of habeas corpus].) A writ of "[h]abeas corpus may thus provide an avenue of relief to those unjustly incarcerated when the normal

method of relief—i.e., direct appeal—is inadequate" (*In re Harris* (1993) 5 Cal.4th 813, 828 [21 Cal.Rptr.2d 373, 855 P.2d 391], fn. omitted), and the Great Writ has been justifiably lauded as " 'the safe-guard and the palladium of our liberties' " (*Clark, supra,* 5 Cal.4th at p. 764, quoting *In re Begerow* (1901) 133 Cal. 349, 353 [65 P. 828]; see also *Lonchar* v. *Thomas* (1996) 517 U.S. 314, 322 [116 S.Ct. 1293, 1298, 134 L.Ed.2d 440], quoting *Smith* v. *Bennett* (1961) 365 U.S. 708, 712 [81 S.Ct. 895, 897-898, 6 L.Ed.2d 39] [writ of habeas corpus is the "highest safeguard of liberty"]).

A tension is thus created between society's desire for finality of its criminal judgments and its insistence the person being punished is actually guilty of the crimes of which he or she was convicted. One way we attempt to resolve this tension is to require collateral challenges be filed promptly, but to excuse delay on a showing of good cause. ■ In capital cases, the timeliness of a petition for a writ of habeas corpus is evaluated according to a four-pronged test. We recently explained this test in *Robbins, supra,* 18 Cal.4th 770, which incorporates policy 3 of the Supreme Court Policies: "Pursuant to policies adopted by this court in June 1989, a habeas corpus petition is not entitled to a presumption of timeliness if it is filed more than 90 days after the final due date for the filing of appellant's reply brief on the direct appeal. In such a case, to avoid the bar of untimeliness with respect to each claim, the petitioner has the burden of establishing (i) absence of substantial delay, (ii) good cause for the delay, or (iii) that the claim falls within an exception to the bar of untimeliness. [¶] Substantial delay is measured from the time the petitioner or his or her counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim. . . . [¶] A claim or a part thereof that is substantially delayed nevertheless will be considered on the merits if the petitioner can demonstrate good cause for the delay. . . . [¶] A claim that is substantially delayed without good cause, and hence is untimely, nevertheless will be entertained on the merits if the petitioner demonstrates (i) that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner; (ii) that the petitioner is actually innocent of the crime or crimes of which he or she was convicted; (iii) that the death penalty was imposed by a sentencing authority that had such a grossly misleading profile of the petitioner before it that, absent the trial error or omission, no reasonable judge or jury would have imposed a sentence of death; or (iv) that the petitioner was convicted or sentenced under an invalid statute." (*Robbins, supra,* at pp. 780-781, italics omitted.) These latter four exceptions were first announced in *Clark, supra,* 5 Cal.4th at pages 797-798.

This set of rules may be summarized as follows. In capital cases, a habeas corpus petitioner bears the burden of establishing the timeliness of his or her

petition, which timeliness can be shown in one of four ways (in descending order): (i) the petition is *presumptively timely*, having been filed within ninety days of the filing of the reply brief on appeal; (ii) even if not presumptively timely, the petition was filed *without substantial delay*; (iii) even if the petition was filed after a substantial delay, *good cause* justifies the delay; or (iv) even if the petition was filed after a substantial delay without good cause, the petitioner comes within one of the four *Clark exceptions*.

 Petitioner's opening brief on appeal was filed October 5, 1984, and his reply brief on appeal was filed March 28, 1985. He filed this, his first state habeas corpus petition, on November 7, 1994. Respondent correctly argues this petition is thus not entitled to a presumption of timeliness because it was not filed "within 90 days after the final due date for the filing of appellant's reply brief on the direct appeal." (Supreme Ct. Policies, *supra*, policy 3, std. 1-1.1.)[3]

The presumption of timeliness being inapplicable, we next decide whether petitioner has satisfied his burden of demonstrating his legal claims in the petition nevertheless were filed without substantial delay. In issuing our order to show cause, we limited the question to "whether, and under what circumstances, ineffective assistance of counsel *may explain or excuse delay in presentation of a claim on habeas corpus* . . . [and] whether counsel appointed to represent petitioner in his automatic appeal rendered ineffective assistance as to any claim set forth in the instant petition for writ of habeas corpus by failing to investigate and present that claim at an earlier time . . . ." (Italics added.) As this phrasing of the issue suggests, the claims in the petition were presented after a substantial delay.

We turn, then, to the central issue in this case: whether the inaction of petitioner's appellate counsel is relevant to the determination of whether the substantial delay in petitioner's filing the petition for a writ of habeas corpus is excused by good cause.

B. *Counsel's Abandonment Constitutes Good Cause for Delay*

At the time of petitioner's appeal, this court followed a general policy in capital cases of appointing the same attorney to represent the defendant for both the direct appeal and habeas corpus proceedings. (See Supreme Ct.

---

[3]This result does not change when we consider that, due to the vintage of this case, five supplemental briefs were filed, the last on June 11, 1990. (Respondent filed a fifth supplemental response on July 2, 1990.) Even were we to assess the timeliness of the petition using this latter date, the habeas corpus petition is nevertheless well outside the 90-day period under standard 1-1.1.

Policies, *supra*, policy 3, std. 1-1.)[4] Accordingly, this court appointed Attorney Dennis Riordan to represent petitioner both on appeal and for any habeas corpus proceedings. Appellate counsel, however, never filed a petition for a writ of habeas corpus. Moreover, according to counsel's own declarations, he conducted a brief investigation that "made clear that a full-scale investigation would be required to compile the evidence necessary to adequately allege habeas claims regarding petitioner's waiver of a penalty phase defense and trial counsel's failure to investigate possible mitigating evidence." Nevertheless, counsel ceased his investigative efforts. Petitioner contends that by engaging in this course of conduct, counsel provided ineffective assistance, in that he essentially abandoned petitioner, and that, under policy 3 of the Supreme Court Policies, this abandonment constitutes "good cause" for the belated filing of the habeas corpus petition. By contrast, respondent argues petitioner has no constitutional right to the assistance of appointed counsel in overturning a final criminal judgment in a state collateral proceeding, and, thus, counsel's alleged ineffective assistance cannot constitute good cause under policy 3.

At the outset, we emphasize the narrowness of the inquiry before us. We are simply determining whether petitioner, a prisoner under sentence of death seeking a writ of habeas corpus, has shown good cause for filing his petition after a substantial delay. Petitioner claims he relied on his court-appointed attorney to comply with this court's timeliness rules and that this legal representative—through no fault of the prisoner—failed to investigate adequately the grounds for potential claims for which there existed triggering facts and, thereafter, to file a petition for a writ of habeas corpus based on reasonably discoverable evidence. If we agree with petitioner that he has shown good cause for the delay, our agreement means only that we will proceed to examine his petition to determine whether he makes an adequate showing for relief on the merits. *A determination petitioner has established "good cause" for the delay does not, in other words, of itself entitle him to any substantive relief;* the availability of such relief must await a further examination of the specific factual allegations in his habeas corpus petition.

If, on the other hand, we find petitioner fails to show good cause for the delay, we need only read the petition to assure ourselves petitioner's factual allegations do not make a prima facie showing his case falls within one of the four exceptions to the timeliness requirement set forth in *Clark, supra,* 5 Cal.4th 750. (See *Robbins, supra,* 18 Cal.4th at pp. 780-781.) In other words, absent the applicability of one of the *Clark* exceptions indicating an error of fundamental magnitude, if a capital defendant files his or her habeas corpus

---

[4]This court amended the Supreme Court Policies, effective February 4, 1998, to permit separate appellate and habeas corpus counsel.

petition after a substantial delay and fails to show good cause for that delay, this court need not consider claims that, had they been timely filed, might have been meritorious.

Keeping in mind the narrowness of the question before us, we turn to whether prior counsel abandoned petitioner in connection with his habeas corpus proceedings and, if so, whether such abandonment establishes good cause under Supreme Court Policies, policy 3 for filing a habeas corpus petition after a substantial delay.

### 1. *Counsel Abandoned His Client*

The original version of the Supreme Court Policies provided that "[a]ppellate counsel in capital cases shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus. . . . All petitions for writs of habeas corpus should be filed without substantial delay." (Supreme Ct. Policies, *supra*, policy 3, former std. 1-1.) This duty imposed on appellate or habeas corpus counsel has three phases. In the first, or preliminary phase, counsel should review the record, trial counsel's case files and the appellate briefs, and should discuss the case with trial counsel and the client. In the second, or investigative phase, counsel should seek investigative funds from this court (Supreme Ct. Policies, *supra*, policy 3, stds. 2-1 to 2-8.3) and promptly and diligently investigate those potential habeas corpus claims concerning which counsel has become aware of triggering facts. In the third, or petition phase, after the diligent investigation of all potential claims is completed, counsel, if appropriate, should prepare and file a habeas corpus petition presenting all potentially meritorious claims.

We recently amended the Supreme Court Policies. Policy 3, standard 1-1 of the Supreme Court Policies, as amended February 4, 1998, provides: "Habeas corpus counsel in a capital case shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus. The duty to investigate is limited to investigating potentially meritorious grounds for relief that come to counsel's attention in the course of reviewing appellate counsel's list of potentially meritorious habeas corpus issues, the transcript notes prepared by appellate counsel, the appellate record, trial counsel's existing case files, and the appellate briefs, and in the course of making reasonable efforts to discuss the case with the defendant, trial counsel and appellate counsel. The duty to investigate does not impose on counsel an obligation to conduct, nor does it authorize the expenditure of public funds for, an unfocused investigation having as its object uncovering all possible factual bases for a collateral attack on the judgment. Instead, counsel has a duty to investigate potential habeas corpus claims only if

counsel has become aware of information that might reasonably lead to actual facts supporting a potentially meritorious claim. All petitions for writs of habeas corpus should be filed without substantial delay."[5]

Should counsel, after a diligent and thorough review of trial counsel's files, the trial record and the appellate briefs, reasonably conclude there are no triggering facts that would lead one to suspect the existence of issues of potential merit, counsel may legally and ethically cease his or her efforts at that time. (See Guidelines for Fixed Fee Appointments, on Optional Basis, to Automatic Appeals and Related Habeas Corpus Proceedings in the California Supreme Court, guideline 5, ¶¶ 2, 4, adopted Dec. 14, 1993 [if, after "all potential leads have been pursued to the extent possible given funding provided therefor," counsel concludes "that no habeas corpus petition will be filed," counsel should file a confidential declaration with the court to that effect].) If triggering facts exist, however, counsel must investigate those grounds.[6] If, after a diligent and thorough investigation, counsel reasonably concludes no potentially meritorious grounds exist for collateral relief, counsel may at that time terminate his or her efforts. Counsel has no obligation to prepare and file a petition for a writ of habeas corpus raising claims that are not even *potentially* meritorious. If, on the other hand, counsel uncovers grounds to support a potentially meritorious claim for relief, he or she must prepare and timely file a petition for a writ of habeas corpus.

█ In light of the scope of these duties, we discern two general situations in which we might find abandonment by counsel constituting good cause for the delay in filing a petition. First, abandonment would occur if, as we have seen in some cases, counsel did absolutely nothing to commence a habeas corpus investigation, or otherwise failed even to acknowledge his or her habeas corpus responsibilities. We have declined to impose the bar of untimeliness in such cases.

Second, abandonment also occurs when counsel ceases representation before he or she should have done so (i.e., before investigation is complete,

[5]This amendment "merely clarifies the previously imposed duty, and accounts for the involvement, under the recent legislation, of separate direct appeal and habeas corpus counsel. The amendment effects no substantive change in the scope of counsel's duty to conduct a habeas corpus investigation." (*Robbins, supra,* 18 Cal.4th at p. 792, fn. 13.)

[6]At the relevant time in this matter, counsel was authorized to file a confidential request for habeas corpus investigation expenses. (See *Gallego, supra,* 18 Cal.4th at p. 833 & fn. 6.) Presently, prior to issuance of an order to show cause, counsel is authorized to incur up to $25,000 in such expenses without obtaining prior approval of this court, and will be reimbursed for such reasonable expenses up to that amount. (See *id.* at p. 833, fn. 7 [describing Jan. 22, 1998, amendments to the compensation standards of the Supreme Ct. Policies, *supra,* policy 3, std. 2].)

and/or before counsel has a reasonable basis upon which to conclude that no potentially meritorious habeas corpus issue exists). Under either form of abandonment, counsel's inaction places a habeas corpus petitioner in the same position as he or she would have been in had he or she been *un*represented. So viewed, abandonment can constitute good cause for delayed presentation of claims, for this court cannot conclude a delayed claim should have been presented earlier, when at the earlier time the petitioner effectively was unrepresented (but reasonably thought he or she was represented).

We turn to the particular facts of this case. Counsel was appointed to represent petitioner on appeal on January 25, 1983. Counsel filed the appellant's opening brief on October 5, 1984, and the reply brief on March 28, 1985. The original version of the Supreme Court Policies became effective on June 6, 1989. We filed our opinion in petitioner's direct appeal more than a year later, on September 27, 1990. (*People* v. *Sanders*, *supra*, 51 Cal.3d 471.)

On appeal, appellate counsel argued trial counsel was constitutionally ineffective by permitting petitioner to waive a penalty phase defense. We rejected the claim, explaining that nothing in the record showed trial counsel "failed to investigate available mitigating evidence or advise defendant of its significance." (*People* v. *Sanders*, *supra*, 51 Cal.3d at p. 526.) At the time the appeal was decided, therefore, appellate counsel was on notice that the only way properly to present this claim was to investigate it and, if the facts warranted, present it in a petition for a writ of habeas corpus.

In October 1989, appellate counsel sought investigative funds from this court to undertake a habeas corpus investigation. We denied without prejudice all but $3,000 of the request. Counsel then used the $3,000 authorization to hire an investigator "to interview petitioner to obtain basic historical information about petitioner and his family, something trial counsel had never done." Petitioner asserts appellate counsel's initial investigation uncovered "biographical information establish[ing] that a major investigation was required in order to compile the evidence necessary to support habeas claims regarding petitioner's waiver of a penalty defense and trial counsel's failure to investigate possible mitigating evidence." Counsel himself states in a 1994 declaration that "[the] biographical information [uncovered in the initial investigation using the $3,000] made clear that a full-scale investigation would be required to adequately allege habeas claims regarding petitioner's waiver of a penalty [phase] defense and trial counsel's failure to investigate possible mitigating evidence."

After obtaining this triggering information, counsel should (under the rules then applicable (see *ante*, p. 708, fn. 6) have returned to this court to

seek additional funding. Instead, citing the press of other work and a belief the Supreme Court Policies did not apply to this case, appellate counsel *did nothing*. Counsel's 1994 declaration explains that he did not proceed to investigate triggering facts (or seek additional funds to do so) because "[s]uch an investigation *simply was beyond my abilities given the extent of my caseload . . . .*" (Italics added.) In a supplemental 1996 declaration, counsel further stated that in 1989, he advised the California Appellate Project "that *I was unable to investigate and draft a habeas corpus petition on behalf of Mr. Sanders.* I believe that I explained . . . that *my workload could not accommodate another capital habeas case,* since I already was representing" two other capital inmates. (Italics added.)[7]

To the extent petitioner claims the Supreme Court Policies do not apply to his case, he is mistaken. As noted, the original version of the Supreme Court Policies provided that "[a]ppellate counsel in capital cases shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus. . . . All petitions for writs of habeas corpus should be filed without substantial delay." (Supreme Ct. Policies, *supra,* policy 3, former std. 1-1, see now std. 1-1, 2d par.) Immediately preceding the quoted language, the Supreme Court Policies stated: "[E]ffective June 6, 1989, all petitions for writs of habeas corpus arising from judgments of death, *whether the appeals therefrom are pending* or previously resolved, *are governed by these standards.*" (Italics added.) As is clear, because petitioner's appeal was pending at the time the Supreme Court Policies became effective, the original version of the policies placed appellate counsel on notice that he was required to investigate the grounds for a petition for a writ of habeas corpus and, if potentially meritorious grounds were uncovered, to prepare and file a petition without substantial delay. (*Robbins, supra,* 18 Cal.4th at p. 808.)

As we explained in *Clark, supra,* 5 Cal.4th at page 783, with exceptions not applicable here, the timeliness requirements in the Supreme Court

---

[7] These passages from counsel's declarations demonstrate that counsel in fact believed he had triggering facts to further investigate the claim of ineffective assistance of trial counsel (based upon failure to investigate and properly advise petitioner concerning presentation of a penalty defense), yet counsel did not do so because he was busy with other matters. Justice Kennard's concurring and dissenting opinion gives insufficient weight to counsel's own explanation of his failure to act, instead supplying a different motivation for counsel. Significantly, however, in neither of his two declarations did counsel advance the justification supplied for him in Justice Kennard's concurring and dissenting opinion (*post,* at pp. 728-729), i.e., that because petitioner did not want a sentence of life imprisonment without possibility of parole, and hence waived a penalty defense, this rendered "any possible inadequacy in trial counsel's penalty phase investigation . . . irrelevant." Instead of advancing the concurring and dissenting opinion's post hoc justification, counsel stated—twice— that he did not pursue the claim, even though he thought it warranted investigation, because doing so did not fit within his caseload.

Policies "did not create or modify the timeliness requirements applicable to all habeas corpus petitions." Rather, the Supreme Court Policies merely "incorporate[d] preexisting timeliness requirements, [and] the plain language of the Policies demonstrates that their timeliness standards *apply to all capital appeals, including those which arose prior to adoption of the Policies.*" (*Clark, supra,* at p. 785, italics added.) Although we acknowledged that "[t]he Policies did, for the first time, impose an express obligation on counsel representing appellants in capital cases to investigate possible bases for habeas corpus" (*id.* at p. 783), we explained that counsel, to come within the rule directing such petitions be filed without substantial delay, need only have filed a petition for a writ of habeas corpus within a reasonable time following promulgation of the Supreme Court Policies (*id.* at p. 785).

Petitioner is correct that he would not, in 1989, have been able to qualify for a finding of presumptive timeliness under the then newly adopted Supreme Court Policies, for his reply brief was filed much earlier than their effective date. Nevertheless, petitioner could have filed a habeas corpus petition without substantial delay. We thus reject petitioner's claim his appellate counsel had no duty at least to investigate the potential grounds for a petition for a writ of habeas corpus. As indicated, petitioner's appellate counsel was on notice, no later than June 6, 1989, the date we adopted the Supreme Court Policies, that he was obligated to investigate the grounds for a possible petition for a writ of habeas corpus, prepare a petition if such grounds were discovered, and file the petition in this court without substantial delay. (*Robbins, supra,* 18 Cal.4th at pp. 791-792.) Counsel's failure to do so left petitioner essentially with no legal representation with regard to habeas corpus claims; that circumstance, as indicated, is relevant to determining whether good cause exists to excuse the lateness of the present petition.

Petitioner further contends his appellate attorney *did not believe* the timeliness rules in the Supreme Court Policies actually applied to this case in 1989. In *Robbins, supra,* 18 Cal.4th at page 780, however, we stated that "good cause is *not* established by prior counsel's asserted uncertainty about his or her duty to conduct a habeas corpus investigation and to file an appropriate habeas corpus petition." (Italics in original.)

Petitioner asserts two additional circumstances relevant to the question of good cause. First, petitioner alleges that, when the Supreme Court Policies became effective in 1989, appointed counsel "was *unable* to undertake the investigation for and the preparation of a state habeas corpus petition" due to other appointments in capital cases from this court, as well as being counsel of record in "more than thirty other cases between June 6, 1989, when the

[Supreme Court Policies] were announced, and August 2, 1991 when certiorari was denied [in this case]." (Italics added.) In his declaration, counsel states that during the critical time in question (1989), he was counsel of record in four capital case appeals (*People* v. *Rodriguez* (1986) 42 Cal.3d 730 [230 Cal.Rptr. 667, 726 P.2d 113]; *People* v. *Bloom* (1989) 48 Cal.3d 1194 [259 Cal.Rptr. 669, 774 P.2d 698]; *People* v. *Roberts* (1992) 2 Cal.4th 271 [6 Cal.Rptr.2d 276, 826 P.2d 274]; and *People* v. *Marshall* (1996) 13 Cal.4th 799 [55 Cal.Rptr.2d 347, 919 P.2d 1280]) and in more than thirty other criminal cases (including one State Bar matter and one parole hearing before the Board of Prison Terms).

That an appellate attorney has demonstrated a willingness to undertake the difficult task of representing criminal defendants sentenced to suffer the death penalty does not excuse his failure timely to investigate fully the potential grounds for habeas corpus relief in any particular case. (See Rules Prof. Conduct, rule 3-110(A) ["A member shall not intentionally . . . fail to perform legal services with competence."], and (B) ["competence" defined as applying the "mental, emotional, and physical ability reasonably necessary for the performance of such service"].) If appellate counsel in this case found himself overextended, he should have sought help by associating other counsel to assist him in complying with his legal obligations (see *id.*, rule 3-110(C)(1)) or filed a motion to withdraw as attorney of record. Counsel's failure to do either supports a finding that he simply abandoned petitioner.

Second, petitioner contends this court's denial of investigative funds hampered counsel's ability to conduct a proper investigation. In *Gallego, supra,* 18 Cal.4th 825, we recognized a petitioner may establish a claim was filed without substantial delay if he or she "previously was unaware of information offered in support of a given claim, and reasonably failed to discover earlier the information offered in support of that claim *because he or she timely requested but was denied funding to investigate that claim.*" (*Id.* at pp. 834-835, italics added, fn. omitted.) If denial of investigative funds is relevant to determining the question of substantial delay, that factor reasonably should also be relevant to the question of whether good cause exists to explain the delay.

As in *Gallego,* in petitioner's case we granted counsel's request for investigative funds only in part. (See *Gallego, supra,* 18 Cal.4th at p. 830.) Unlike in *Gallego,* however, we denied the balance of counsel's fund request without prejudice. Thus, although petitioner contends this court's denial of investigative funds hampered counsel's ability to conduct a thorough investigation, counsel need only have renewed his request for funds, making sure to allege "[s]pecific facts that suggest there may be an issue of possible

merit." (Supreme Ct. Policies, *supra*, policy 3, std. 2-4.2.) *Gallego*, then, is inapposite.

Nor is this a case lacking potentially meritorious issues. Although we will, by separate order, address the substantive merits of the claims raised in the petition for a writ of habeas corpus, we note the petition contains no shortage of claims raising issues of *potential* merit. Perusal of the petition reveals the allegation of some potentially disturbing aspects of petitioner's trial, including claims that: (i) petitioner's trial counsel, a former prosecutor, had previously used one of the prosecution witnesses in a sting operation; (ii) trial counsel had, in 1973 and in his role as a prosecutor, accepted a guilty plea from one of petitioner's alibi witnesses; (iii) police actively concealed the whereabouts of a potentially exculpatory witness; (iv) a juror who served on the jury concealed on voir dire her arrest for growing marijuana; (v) one juror received extrinsic evidence; (vi) one juror received a letter from petitioner; (vii) one juror was experiencing severe emotional problems during trial and stated that, had she been less depressed, she "might well have held out and not voted to convict"; (viii) petitioner was incompetent to waive a penalty phase defense; (ix) trial counsel provided ineffective assistance of counsel by failing to investigate and present evidence in mitigation; and (x) at least some of the jurors learned that the jury in petitioner's first trial had hung 11 to 1.

Triggering facts for many of these and other claims now raised in a petition for a writ of habeas corpus were either known to petitioner or exist in the appellate record. Such claims would certainly appear to have been "potentially meritorious" for purposes of investigation and, if appropriate, for presentation to this court. Irrespective of the ultimate success of the petition in any given case, habeas corpus counsel (or, as here, appellate counsel acting as habeas corpus counsel), as explained, *ante*, has the duty to conduct a reasonable investigation and to present not just actually meritorious claims (an imponderable before adjudication), but all potentially meritorious claims.[8]

In sum, neither counsel's belief in the inapplicability of the Supreme Court Policies, nor his pressing caseload, excuses his inaction. Appellate

---

[8]We caution, however, that just as "[the] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail . . . is the hallmark of effective appellate advocacy" (*Smith* v. *Murray* (1986) 477 U.S. 527, 536 [106 S.Ct. 2661, 2667, 91 L.Ed.2d 434]; see *Robbins, supra,* 18 Cal.4th at p. 810, fn. 31), so too habeas corpus counsel must make decisions on which claims to include in a petition. Although we often see voluminous habeas corpus petitions in capital cases, raising dozens of issues and subclaims, accompanied by hundreds of pages of exhibits, we emphasize that counsel should present *only* those claims that are potentially meritorious, not all possible claims.

counsel possessed facts indicating that issues of potential merit existed and that additional investigation was required. In response to such triggering facts, counsel did not seek additional funding or conduct a further investigation in order to determine whether potentially meritorious claims existed. Nor did he move to associate additional counsel to assist him with his workload, or withdraw from his appointed obligations. Instead, he did nothing. Counsel, in short, abandoned his client.

Respondent argues petitioner's appellate attorney was "an experienced, perhaps pre-eminent, authority on capital defense" and that "it is unlikely that such an experienced capital defense attorney . . . simply cavalierly concluded that [the Supreme Court] Policies did not apply to him because the briefs in this case were filed before the policies were published." Respondent suggests counsel had a tactical reason for failing to investigate in the face of triggering facts. This tactical reason, respondent suggests, eliminates the possibility that counsel's abandonment was other than a "calculated plan" to delay the case. Petitioner strenuously opposes this notion; he has filed a supplemental declaration by appellate counsel that flatly denies counsel had any tactical reason for failing to file a habeas corpus petition.[9]

On the state of this record, keeping in mind our inquiry concerns the timeliness of the filing—a procedural point—and not the entitlement to substantive relief, we resolve this issue on the pleadings and simply accept the assertions in counsel's sworn declaration. Our resolution of this issue on the pleadings is consistent with our decision in *Robbins, supra,* 18 Cal.4th 770, in which, faced with conflicting allegations in the respondent's return and the petitioner's traverse regarding when the petitioner learned of the factual basis of a claim, we resolved the issue on the pleadings and accepted the petitioner's sworn statements. (*Id.* at pp. 798-799.) Under the circumstances, we reject respondent's contention that counsel acted for a tactical reason.

---

[9] We are aware that delaying the proceedings may be viewed by some attorneys representing defendants condemned to suffer the death penalty as a strategic or tactical decision, for unless the defendant has potentially meritorious legal claims to raise on direct appeal or in a collateral attack, an attorney may believe that delaying final adjudication of legal claims is the only way realistically to serve the client's interests. In the early days of capital habeas corpus litigation following reinstitution of the death penalty in this state, it was not uncommon for attorneys in capital cases to file state habeas corpus petitions at the last possible moment, after an execution date was set, federal counsel appointed by the federal courts, and a federal habeas corpus petition filed. With the issuance of the Supreme Court Policies in 1989, however, it became clear that such delay is not a permissible tactical course. As a result of the adoption of the Supreme Court Policies and the decision in *Clark, supra,* 5 Cal.4th 750, we now find habeas corpus petitions generally are filed in timely fashion in this court.

## 2. The Absence of a Federal Constitutional Right to Counsel Is Irrelevant

■ Respondent contends petitioner's abandonment by counsel is of no legal consequence, because petitioner does not have a federal constitutional right to appointment of counsel for state collateral proceedings. A criminal defendant, of course, is entitled *at trial* to representation by competent legal counsel, a right guaranteed by both the federal and state Constitutions. (*In re Fields* (1990) 51 Cal.3d 1063, 1069 [275 Cal.Rptr. 384, 800 P.2d 862]; U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) We are well acquainted with claims of ineffectiveness of trial counsel in capital cases, for they are made in many, if not most, such cases. (See, e.g., *In re Jones* (1996) 13 Cal.4th 552 [54 Cal.Rptr.2d 52, 917 P.2d 1175] [judgment vacated in its entirety due to ineffectiveness of trial counsel]; *In re Marquez* (1992) 1 Cal.4th 584 [3 Cal.Rptr.2d 727, 822 P.2d 435] [judgment vacated insofar as it imposes the death penalty due to ineffectiveness of trial counsel]; *In re Sixto* (1989) 48 Cal.3d 1247 [259 Cal.Rptr. 491, 774 P.2d 164] [judgment vacated in entirety due to ineffectiveness of trial counsel].)

If a state provides convicted criminals a first appeal of right, the federal constitutional guarantees of due process (fair procedure) and equal protection (equality among litigants)[10] require that state to provide appellate counsel for indigent defendants. (*Murray* v. *Giarratano* (1989) 492 U.S. 1, 7 [109 S.Ct. 2765, 2768-2769, 106 L.Ed.2d 1] (*Murray*); *Douglas* v. *California, supra,* 372 U.S. 353.) Under such circumstances, due process requires that an appellate attorney appointed by the state provide constitutionally effective legal assistance. (*Evitts* v. *Lucey* (1985) 469 U.S. 387, 396 [105 S.Ct. 830, 836, 83 L.Ed.2d 821].) Our Legislature has provided generally for the appointment of appellate counsel for indigents (§ 1240.1), and we have, in the past, held a criminal defendant is guaranteed the right to effective legal representation on appeal. (See, e.g., *People* v. *Lang* (1974) 11 Cal.3d 134, 142 [113 Cal.Rptr. 9, 520 P.2d 393]; *In re Smith* (1970) 3 Cal.3d 192, 202-203 [90 Cal.Rptr. 1, 474 P.2d 969]; but see *Jones* v. *Barnes* (1983) 463 U.S. 745 [103 S.Ct. 3308, 77 L.Ed.2d 987] [appellate counsel need not raise

---

[10]*Griffin* v. *Illinois* (1956) 351 U.S. 12 [76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055] held that when a state provides a first appeal of right, the federal Constitution requires that state to provide a trial transcript to indigents to facilitate their appeals. *Douglas* v. *California* (1963) 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811] held the same with regard to the provision of counsel on appeal. In *Ross* v. *Moffitt* (1974) 417 U.S. 600 [94 S.Ct. 2437, 41 L.Ed.2d 341] (*Ross*), the high court observed that "[t]he precise rationale for the *Griffin* and *Douglas* lines of cases has never been explicitly stated, some support being derived from the Equal Protection Clause of the Fourteenth Amendment, and some from the Due Process Clause of that Amendment. Neither Clause by itself provides an entirely satisfactory basis for the result reached . . . ." (*Id.* at pp. 608-609 [94 S.Ct. at p. 2443], fn. omitted.)

all nonfrivolous claims on appeal]; *Strickland* v. *Washington* (1984) 466 U.S. 668, 687-696 [104 S.Ct. 2052, 2064-2069, 80 L.Ed.2d 674] [relief for ineffective assistance of trial counsel requires showing of prejudice].)

Although the law thus requires an attorney to maintain a basic level of professional competence when representing a client in a direct criminal appeal, respondent argues petitioner's abandonment by his court-appointed attorney during the postverdict habeas corpus investigation period cannot constitute good cause for the delay in the presentation of issues in the present petition. In support, respondent cites decisions of the United States Supreme Court holding a criminal defendant enjoys no federal constitutional right to the assistance of state-appointed counsel in mounting a discretionary challenge to a final criminal judgment. As we explain, this authority is irrelevant.

Respondent is correct in stating the federal Constitution does not guarantee appointment of counsel for discretionary review proceedings, such as state habeas corpus proceedings. (*Coleman* v. *Thompson* (1991) 501 U.S. 722, 752-754 [111 S.Ct. 2546, 2566-2567, 115 L.Ed.2d 640] (*Coleman*); *Murray, supra,* 492 U.S. at pp. 7-8 [109 S.Ct. at p. 2769]; *Pennsylvania* v. *Finley* (1987) 481 U.S. 551 [107 S.Ct. 1990, 95 L.Ed.2d 539]; see also *Ross, supra,* 417 U.S. at pp. 610 [94 S.Ct. at pp. 2443-2444] [discretionary appeal to state's highest court], 616-618 [94 S.Ct. at pp. 2446-2447] [petition for certiorari in the United States Supreme Court]; *Wainwright* v. *Torna* (1982) 455 U.S. 586 [102 S.Ct. 1300, 71 L.Ed.2d 475] (*per curiam*) [petition for certiorari in Florida Supreme Court].)

Respondent further argues that if a defendant has no federal constitutional right to the assistance of counsel in state habeas corpus proceedings, the defendant necessarily has no right to the effective assistance of such counsel. This, indeed, is the prevailing federal rule. (*Coleman, supra,* 501 U.S. at p. 752 [111 S.Ct. at p. 2566], citing *Wainwright* v. *Torna, supra,* 455 U.S. 586 [there being no right to counsel for discretionary appellate review, attorney's failure to file a timely petition could not be ineffective assistance of counsel]; *Campbell* v. *Wood* (9th Cir. 1994) 18 F.3d 662, 676-678; *Odle* v. *Calderon* (N.D.Cal. 1995) 884 F.Supp. 1404, 1433-1434.) Concluding the argument, respondent asserts that if petitioner has no federal constitutional right to effective assistance of counsel for state habeas corpus proceedings, then abandonment by counsel similarly should not constitute good cause for a delay in filing.

Irrespective, however, of whether or not a criminal defendant enjoys the right, under the federal Constitution, to appointed counsel as a matter of due

process or equal protection, a state may choose, as a matter of state law, to appoint an attorney to assist a death row prisoner in investigating, preparing and filing a petition for a writ of habeas corpus. If a state thus chooses to appoint an attorney for that purpose, the absence of a federal constitutional right to the appointment does not obligate this court to tolerate abandonment of a capital defendant by that attorney. Consequently, notwithstanding the above-stated rule of federal constitutional law, nothing prohibits this court from considering habeas corpus counsel's actions (or inaction) when evaluating whether, *under policy 3 of the Supreme Court Policies*, good cause exists for filing a petition for a writ of habeas corpus after a substantial delay.

In California, appointment of counsel to assist capital defendants[11] to prepare and file petitions for writs of habeas corpus has long been this court's practice. We first announced this practice in *In re Anderson* (1968) 69 Cal.2d 613 [73 Cal.Rptr. 21, 447 P.2d 117], where we stated: "We believe that it will protect the interests of defendants and promote the cause of justice for this court to appoint counsel to represent indigent defendants in capital cases in the following proceedings undertaken between the termination of their state appeals and their execution: (a) *Proceedings in this court for post-conviction review* . . . . Hereafter, as a matter of policy, and upon application of the defendant, we will appoint counsel in such instances." (*Id.* at p. 633, fn. omitted, italics added.)

This practice is currently memorialized in three places. First, part XV A of the Internal Operating Practices and Procedures of the California Supreme Court (hereafter Internal Operating Practices) states: "In criminal matters, upon a verified or certified statement of indigency, the court, acting through the Clerk's Office, will appoint an attorney for a party in the following instances: [¶] . . . [¶] 2. In a pending automatic appeal *and/or related state habeas corpus* . . . proceedings." (Italics added.) Part XV B of the Internal Operating Practices continues: "At or after the time the court appoints appellate counsel to represent an indigent appellant on direct appeal, *the court also shall offer to appoint habeas corpus* . . . *counsel for each indigent capital appellant*." (Italics added.) Part XV C of the Internal Operating Practices goes on to explain that this court maintains an "Automatic Appeals Monitor" who is responsible for assisting the court in locating available attorneys for appointment, and part XV D sets forth the manner in which such appointed counsel are compensated.

---

[11]No analogous provision exists for prisoners not subject to the death penalty (*Clark, supra,* 5 Cal.4th at p. 783), although once an order to show cause issues in a noncapital case, indicating the petitioner has made a prima facie showing of entitlement to relief, "the appointment of counsel is demanded by due process concerns" (*id.* at p. 780).

A capital defendant's right, under state law, to appointment of counsel for state collateral proceedings also finds voice in the Supreme Court Policies. At the time petitioner's habeas corpus petition should have been filed, standard 1-1 of policy 3 provided in part: "Appellate counsel in capital cases shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus." (Supreme Ct. Policies, *supra*, policy 3, former std. 1-1, adopted June 6, 1989.)[12] Policy 3 thus made clear, at least as of June 6, 1989, that we expected appointed counsel in capital cases to investigate the grounds for a petition for a writ of habeas corpus and then, if warranted by the investigation, to prepare and file a petition. (*Robbins, supra*, 18 Cal.4th at p. 808.)

Third, most recently, the Legislature has provided that "[t]he Supreme Court shall offer to appoint counsel to represent all state prisoners subject to a capital sentence for purposes of state postconviction proceedings . . . ." (Gov. Code, § 68662.) Although this statute was not in effect when petitioner's appointed attorney should have investigated and filed a petition for a writ of habeas corpus, the Legislature's enactment underscores our conclusion that state law requires appointment of counsel to represent capital defendants in postconviction proceedings.

---

[12]As amended February 4, 1998, the pertinent standard now states in full: "Appellate counsel in a capital case shall take and maintain detailed, understandable and computerized transcript notes and shall compile and maintain a detailed list of potentially meritorious habeas corpus issues that have come to appellate counsel's attention. In addition, if appellate counsel's appointment does not include habeas corpus representation, until separate counsel is appointed for that purpose, appellate counsel shall preserve evidence that comes to the attention of appellate counsel if that evidence appears relevant to a potential habeas corpus investigation. If separate 'post-conviction' habeas corpus/executive clemency counsel (hereafter 'habeas corpus' counsel) is appointed, appellate counsel shall deliver to habeas corpus counsel copies of the list of potentially meritorious habeas corpus issues, copies of the transcript notes, and any preserved evidence relevant to a potential habeas corpus investigation, and thereafter shall update the issues list and transcript notes as warranted. Appellate counsel shall consult with and work cooperatively with habeas corpus counsel to facilitate timely investigation, and timely preparation and filing (if warranted) of a habeas corpus petition by habeas corpus counsel.

"Habeas corpus counsel in a capital case shall have a duty to investigate factual and legal grounds for the filing of a petition for a writ of habeas corpus. The duty to investigate is limited to investigating potentially meritorious grounds for relief that come to counsel's attention in the course of reviewing appellate counsel's list of potentially meritorious habeas corpus issues, the transcript notes prepared by appellate counsel, the appellate record, trial counsel's existing case files, and the appellate briefs, and in the course of making reasonable efforts to discuss the case with the defendant, trial counsel and appellate counsel. The duty to investigate does not impose on counsel an obligation to conduct, nor does it authorize the expenditure of public funds for, an unfocused investigation having as its object uncovering all possible factual bases for a collateral attack on the judgment. Instead, counsel has a duty to investigate potential habeas corpus claims only if counsel has become aware of information that might reasonably lead to actual facts supporting a potentially meritorious claim. All petitions for writs of habeas corpus should be filed without substantial delay." (Supreme Ct. Policies, *supra*, policy 3, std. 1-1, as amended Feb. 4, 1998.)

In sum, although the federal Constitution does not require this state to appoint counsel to represent indigent death row prisoners in state habeas corpus proceedings, (i) *In re Anderson, supra,* 69 Cal.2d 613, (ii) this court's own Internal Operating Practices, (iii) policy 3 of the Supreme Court Policies, and now (iv) Government Code section 68662 all require such appointment. The question is a matter of state law, not federal constitutional law, and the absence of a federal right does not prevent this court, under state law, from considering counsel's abandonment as good cause for the delay.

### 3. *Abandonment by Counsel Constitutes Good Cause for Delay*

To reiterate: We appointed counsel to represent petitioner on direct appeal and in habeas corpus proceedings, and this attorney, we have established, abandoned petitioner sometime during the postconviction stage of the proceedings. State law requires counsel be appointed for capital prisoners seeking to pursue state postconviction remedies; the absence of a corollary right under the federal Constitution is no impediment to this court's consideration of abandonment as good cause for the delay in filing a state habeas corpus petition. We now turn to whether counsel's abandonment constitutes good cause under state law.

We have previously recognized that prior counsel's actions (or inactions) may be relevant to the proper application of the procedural rules that affect the availability of relief on habeas corpus. Thus, in *Clark, supra,* 5 Cal.4th 750, the petitioner filed a successive petition for a writ of habeas corpus, thereby violating, at least facially, the procedural rule prohibiting successive petitions. (*Id.* at pp. 767-768; *In re Horowitz* (1949) 33 Cal.2d 534, 546-547 [203 P.2d 513].) We acknowledged in *Clark* the federal rule holding no Sixth Amendment (right to counsel) or Fourteenth Amendment (due process) right to appointed counsel exists for state habeas corpus proceedings. Nevertheless, we explained that "[i]n limited circumstances, *consideration may be given to a claim that prior habeas corpus counsel did not competently represent a petitioner.* An imprisoned defendant is entitled by due process to reasonable access to the courts, and to the assistance of counsel if counsel is necessary to ensure that access . . . ." (5 Cal.4th at p. 779, italics added.) After citing *Murray, supra,* 492 U.S. 1, and *Coleman, supra,* 501 U.S. 722, *Clark* continues: "*Regardless of whether a constitutional right to counsel exists, a petitioner who is represented by counsel when a petition for writ of habeas corpus is filed has a right to assume that counsel is competent and is presenting all potentially meritorious claims.* [Citations.] [¶] If, therefore, counsel failed to afford adequate representation in a prior habeas corpus application, *that failure may be offered in explanation and justification of the*

*need to file another petition.*" (*Clark, supra,* at p. 780, italics added, underscoring denotes italics in original.)

As is clear, *Clark* acknowledged the tension between the federal cases finding no constitutional right to appointed counsel for state habeas corpus proceedings (see, e.g., *Coleman, supra,* 501 U.S. 722; *Murray, supra,* 492 U.S. 1) and the practice of this court, which appoints such counsel. *Clark* resolved the tension by recognizing these two concepts are not linked; a prisoner who has appointed counsel is entitled to rely on that attorney to conduct a reasonable investigation and, if appropriate, present viable claims in a single petition so as to avoid the prohibition on successive or seriatim petitions. *Clark* concludes the attorney's failure to do so "may be offered in explanation and justification." (*Clark, supra,* 5 Cal.4th at p. 780.) In other words, we recognized in *Clark* that the actions (or inactions) of appointed counsel are relevant to deciding whether the procedural rule against successive habeas corpus petitions is applicable.

 Consistent with *Clark*, we find that where, as here, appointed counsel abandons his or her client during the postconviction period, failing to conduct a reasonable investigation and file a petition if the facts so warrant, that circumstance also "may be offered in explanation and justification" for the necessity of filing a state habeas corpus petition after a substantial delay. (*Clark, supra,* 5 Cal.4th at p. 780.)[13] Any other conclusion would require that we accept the following potential scenario: This court appoints an attorney to represent a capital defendant in postconviction proceedings, including collateral proceedings (Internal Operating Practices, pt. XV A.2), and compensates the attorney for his or her legal work (*id.,* pt. XV D; see also Payment Guidelines for Appointed Counsel Representing Indigent Criminal Appellants in the California Supreme Court). It later develops that the court-appointed attorney has abandoned his or her client. Time passes as the prisoner, falsely confident he has a professional legal representative actively protecting his interests, waits for news. The prisoner finally learns of counsel's abandonment of the case and secures substitute counsel. New counsel investigates the grounds for, and files, a habeas corpus petition for the first time, whereupon we refuse to consider the merits of the

---

[13]Normally we would evaluate the justifications for delay in presentation of claims individually, that is, based on when petitioner or counsel knew, or should have know, of the facts underlying each claim. (See generally, *Robbins, supra,* 18 Cal.4th at p. 799, fn. 21; but see *id.,* pp. 820-821 (conc. & dis. opn. of Kennard, J.).) Because prior counsel's abandonment necessarily affected petitioner's ability to raise any and all of his claims, we need not in this case determine whether any individual claim raised in the petition could have been raised earlier.

claims[14] because the petition—*through no fault of the prisoner*—was filed after a substantial delay.

The state's interest in the finality of its criminal judgments, though strong, does not require that we accept this incongruous, and harsh, result. (See *Robbins, supra,* 18 Cal.4th at p. 799, fn. 22 [rejecting Attorney General's argument the state's interest in finality outweighs a prisoner's right to present a delayed claim, the grounds of which he neither knew nor reasonably should have known earlier].) This is because recognizing that abandonment by counsel constitutes good cause for delay would not itself upset a final judgment, but would simply allow a habeas corpus petitioner to have his or her substantive claims considered on their merits. In short, the petitioner will have his day in court and will not be penalized by counsel's inaction.

Despite this authority, respondent strenuously argues we should not consider counsel's prior efforts (or lack thereof) when determining good cause, because to do so "would defeat the purpose of establishing procedural requirements. If any procedural default, whether volitional or inadvertent . . . could be excused by alleging ineffectiveness of counsel, then the exceptions would swallow the rule . . . . Procedural default would be an empty concept, and the procedural rules for filing habeas corpus petitions, along with their underlying purposes of fairness and prompt resolution of legitimate claims, would be meaningless."

We share respondent's concern with the integrity of our procedural rules. In the present context, however, respondent overstates the case. To begin with, our conclusion that prior counsel's abandonment is a relevant factor when determining whether a petitioner has shown good cause under policy 3 of the Supreme Court Policies for a petition filed after a substantial delay does not mean, as respondent contends, that we will condone "*any* procedural default, whether volitional or inadvertent." (Italics added.) To the contrary, we reiterate that "[t]his court has never condoned abusive writ practice or repetitious collateral attacks on a final judgment" (*Clark, supra,* 5 Cal.4th at p. 769), and "habeas corpus is an extraordinary remedy that 'was

---

[14]Absent, of course, the presence of claims involving one of the four *Clark* exceptions. (*Clark, supra,* 5 Cal.4th at pp. 797-798.)

Respondent also contends that these exceptions provide adequate relief to those capital defendants unfortunate enough to have been abandoned by counsel. Although admittedly the four *Clark* exceptions provide a window for those claims that, for whatever reason, were not properly presented earlier, the exceptions are no substitute for a showing of good cause under our timeliness rules. Under the Supreme Court Policies, the exceptions are relevant only after a determination has been made that good cause does not justify the substantial delay in presentation of claims.

not created for the purpose of defeating or embarrassing justice, but to promote it' " (*Robbins, supra,* 18 Cal.4th at p. 777, quoting *In re Alpine* (1928) 203 Cal. 731, 744 [265 P. 947, 58 A.L.R. 1500]). This court has long required a habeas corpus petitioner to justify a substantial delay in presenting issues to the court (*Clark, supra,* at p. 765; *In re Swain, supra,* 34 Cal.2d at pp. 302, 304), and failure to do so can lead to denial on that ground alone.

Nor is it sufficient, as respondent argues, for a habeas corpus petitioner to simply allege prior counsel abandoned him or her. We emphasize the petitioner's burden is to *establish* good cause for any substantial delay. (*Gallego, supra,* 18 Cal.4th at p. 832; *Robbins, supra,* 18 Cal.4th at p. 780.) A bare allegation that prior counsel abandoned him or her, without more, will be insufficient for a habeas corpus petitioner to carry this burden.

Moreover, to the extent respondent argues that any consideration whatsoever of prior counsel's actions or omissions will destroy the efficacy of our procedural rules, he is mistaken. This court will examine closely any proffered justification for substantial delay, including the particular circumstances of a case in which a petitioner contends good cause is established due to his or her abandonment by prior counsel. (See Supreme Ct. Policies, *supra,* policy 3, std. 1-2 [in capital cases, "petitioner may establish good cause by showing particular circumstances sufficient to justify substantial delay"].) In addition, even where prior counsel abandons his or her client, new counsel, we note, is subject to the same timeliness requirements. Thus, new counsel must investigate issues of possible merit and, if facts supportive of an issue or issues of potential merit are discovered, prepare and file the petition, all without substantial delay.

Although respondent argues for a rule that would have this court deny a belated habeas corpus petition on procedural grounds alone, without reaching the merits, when the delay is attributable to the attorney's abandonment of his or her client during the postconviction period, we reiterate this harsh result is not justified by the need to ensure the finality of this state's criminal judgments.[15] (See *Robbins, supra,* 18 Cal.4th at p. 799, fn. 22.) Recognizing that prior counsel's abandonment is a relevant factor in determining whether a petitioner has shown good cause to justify a delay in presentation of claims

---

[15]Neither is this result necessary to assure attainment of the "institutional goal[]" of maintaining "the integrity of our appeal and habeas corpus process." (*Robbins, supra,* 18 Cal.4th at p. 778, fn. 1.) Although the imposition and enforcement of timeliness requirements for habeas corpus challenges in capital litigation has indeed had the "salutary effect" of encouraging "prompt investigation and submission of habeas corpus claims" (*ibid.*), the integrity of our habeas corpus process is not furthered by punishing a prisoner, abandoned by counsel through no fault of his or her own, by refusing to consider the petitioner's first habeas corpus petition on its merits.

simply means we will, in appropriate circumstances, overlook delay attributable to the abandonment by prior counsel and evaluate the merits of a petitioner's legal claims. If a death row prisoner can show he or she is otherwise entitled to relief due to an error in his or her trial, the cause of justice is hardly advanced by the highest court in the State of California refusing even to consider the claim because the prisoner's former attorney abandoned the case at a time state law required him or her to be conducting a reasonable investigation into issues of potential merit.

In short, we reject respondent's contention that the potential for abusive writ practice on the part of capital defendants justifies a conclusion the abandonment by prior counsel should play no part in the evaluation of whether good cause exists to excuse a petition filed after a substantial delay. Instead, we conclude the abandonment by prior counsel is a relevant factor in the determination of whether good cause for delay exists in a particular case. Recognizing the potential deleterious effect on the legal system caused by an appointed counsel's abandonment of a capital client will not, as respondent claims, render "procedural default . . . an empty concept," nor will it convert the procedural rules applicable to habeas corpus petitions into a meaningless ritual. As explained above, petitioner bears the burden of establishing good cause, and this court will remain vigilant in enforcing our timeliness rules, taking appropriate corrective action when faced with abusive writ practices.

We therefore conclude prior counsel's abandonment of petitioner constitutes good cause for the filing of a petition for a writ of habeas corpus after a substantial delay. This conclusion is not foreclosed by federal precedent and is fully consistent with our Internal Operating Practices, policy 3 of the Supreme Court Policies, Government Code section 68662 and, by analogy, our own recent precedent (*Clark, supra,* 5 Cal.4th at p. 780). In light of the detrimental effect to the administration of justice caused by the delayed presentation of legal claims in capital cases, however, counsel are warned that the postconviction abandonment of capital clients in the future will result in referral to the State Bar for appropriate discipline, and may also result in this court's seeking repayment of unearned fees and expenses (see Payment Guidelines for Appointed Counsel Representing Indigent Criminal Appellants in the California Supreme Court, pt. V [Court Action Upon Nonperformance of Work and Reimbursement of Fees Upon Authorized Withdrawal of Appointed Counsel]).

## CONCLUSION

In sum, we find: (1) counsel, appointed by this court to represent petitioner for postconviction proceedings, essentially abandoned his client; (2)

such abandonment constitutes good cause excusing the substantial delay in filing the petition for a writ of habeas corpus that is attributable to counsel's abandonment; and (3) none of the claims, therefore, presented in petitioner's habeas corpus petition should be denied as untimely.[16] Accordingly, in response to the third question in our order to show cause ("whether this court must therefore determine whether any such claim states a prima facie case for relief on the merits"), we conclude we must evaluate all of petitioner's stated claims to determine whether he states a prima facie case for relief on the merits.

Because we confined our order to show cause to the procedural issues in the case, we do not address in this opinion the substantive merits of the claims raised in the petition for a writ of habeas corpus. Such claims will be resolved by separate order. (See *In re Hamilton* (1999) 20 Cal.4th 273, 307 [84 Cal.Rptr.2d 403, 975 P.2d 600]; *Robbins, supra,* 18 Cal.4th at pp. 813-814; *Gallego, supra,* 18 Cal.4th at p. 838.)

The order to show cause is discharged.

George, C. J., and Chin, J., concurred.

**MOSK, J.—** I concur in the result.

In this proceeding, the court considers yet again a petition for writ of habeas corpus by a condemned prisoner and the machinery of "procedural bars" against the granting of relief that decisions such as *In re Clark* (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729] have fabricated. More accurately, it does not examine the substance of the petition itself. Instead, it addresses, at length and in detail, a single procedural bar, namely, "untimeliness," with its incorporated notions of "substantial delay" and "good cause." In the end, in discharging the order to show cause, it refuses to dismiss the petition as untimely in favor of determining its claims on the merits. In that refusal I join, fully and without reservation.

Beyond noting my concurrence in the result, I write separately to express my agreement that, on the assumption that *Clark*'s machinery of procedural bars against relief on habeas corpus operates both appropriately and efficiently, former counsel's abandonment of a petitioner without submitting a petition on his behalf may, and here does, constitute "good cause" for any "substantial delay" by successor counsel in eventually submitting just such a petition. Indeed, *Clark* itself compels this conclusion. It states: "If . . .

---

[16]In light of this finding, petitioner's "Motion for Leave to Supplement Timeliness Allegations," filed in this court on August 24, 1998, is denied as moot.

counsel failed to afford adequate representation in a prior habeas corpus application, that failure may be offered in explanation and justification of the need to file another petition." (*In re Clark, supra,* 5 Cal.4th at p. 780.) A fortiori, if former counsel failed to afford *any* representation and hence failed to submit *any* petition, that failure may be offered in explanation and justification of the need for successor counsel to submit an initial petition after even substantial delay.

I also write separately, however, to state, yet again, that *Clark*'s machinery of procedural bars against relief on habeas corpus does not in fact operate either appropriately or efficiently.

To be sure, the "writ of habeas corpus ' "was not created for the purpose of defeating or embarrassing justice, but to promote it[,]" ' " especially when the challenged confinement is pursuant to a judgment of death. (*In re Robbins* (1998) 18 Cal.4th 770, 816 [77 Cal.Rptr.2d 153, 959 P.2d 311] (conc. opn. of Mosk, J.).)

But the "only path that would guarantee the attainment of justice in such a situation" is "the 'examin[ation]' of 'each' habeas corpus 'petition on its own facts' in order to determine whether the petitioner has alleged specific facts that would entitle him to relief." (*In re Robbins, supra,* 18 Cal.4th at p. 816 (conc. opn. of Mosk, J.).)

True, the " 'scrutiny' of the merits" that examination of this sort entails " 'requires the expense of considerable judicial resources . . . .' " (*In re Robbins, supra,* 18 Cal.4th at p. 816 (conc. opn. of Mosk, J.).)

But such "[s]crutiny . . . requires much less than does the effort to invoke each and every procedural bar. Or even the effort to invoke any one such bar." (*In re Robbins, supra,* 18 Cal.4th at p. 816 (conc. opn. of Mosk, J.).) For proof, the reader need only consider two facts reflected herein. One is the "many pages" that the court has had to "devote to the single procedural bar of untimeliness . . . ." (*Ibid.,* italics omitted.) The other is the substantial time that it has had to take to resolve the single underlying issue—the petition having been filed more than four and one-half years ago and the order to show cause having issued more than three years ago. I cannot fault any of my colleagues, all of whom I believe have proceeded diligently and properly. Rather, I must blame the procedural bar of untimeliness itself. It is " 'indeterminate at [its] very core.' " (*Id.* at p. 817, fn. 3 (conc. opn. of Mosk, J.).) As such, "its application to any given claim [or any given petition] may yield varying results, as reasonable persons differ as to whether the claim [or petition] in question has been presented without 'substantial delay' and, if

not, whether 'good cause' exists for any such delay. But, worse yet, its very meaning is vague, as such persons attempt to discern the sense of 'substantial delay' and 'good cause.' " (*Ibid.*) The result, in spite of the best and most honest efforts, is, and will continue to be, arbitrary and capricious decision-making and arbitrary and capricious decisions.

"Because principle and pragmatism show themselves in rare conjunction in this proceeding, as in all others in which" the challenged confinement is pursuant to a judgment of death (*In re Robbins, supra,* 18 Cal.4th at p. 817 (conc. opn. of Mosk, J.)), I join the court in discharging the order to show cause, and in refusing to dismiss the petition as untimely in favor of determining its claims on the merits.

**KENNARD, J.,** Concurring and Dissenting.— Justice Werdegar's plurality opinion states: "[W]hen . . . an attorney representing a capital defendant essentially abandons his client and fails, in the face of triggering facts, to conduct an investigation in order to determine whether there exist potentially meritorious claims, such abandonment constitutes good cause for substantial delay in the presentation of potentially meritorious claims by subsequent counsel." (Plur. opn., *ante,* at p. 701.) I agree.

I disagree, however, with the plurality's further conclusion that Dennis Riordan, petitioner's highly competent appellate counsel, abandoned him in this case. Therefore, with the exception of any issues for which petitioner has explained the delay on grounds other than abandonment, I would deny all claims in the petition for writ of habeas corpus as untimely.

As the plurality explains (plur. opn., *ante,* at pp. 707-708), the duty imposed on a habeas corpus counsel in a capital case has three phases. In the first phase, directly after counsel's appointment, counsel should review the record, trial counsel's case files, and the appellate briefs, and should discuss the case with trial counsel and the client. (See Supreme Ct. Policies Regarding Cases Arising From Judgments of Death, Policy 3, Standards Governing Filing of Habeas Corpus Petitions and Compensation of Counsel in Relation to Such Petitions (Policy 3), std. 1-1.) In the second or investigative phase, counsel should investigate potential habeas corpus claims as to which counsel is aware of "triggering facts," that is, facts sufficient to warrant further investigation, but not necessarily sufficient to state a prima facie case for relief. (*In re Gallego* (1998) 18 Cal.4th 825, 833 [77 Cal.Rptr.2d 132, 959 P.2d 290].) Counsel should seek investigative funds from this court when necessary to achieve this task. (Supreme Ct. Policies Regarding Cases Arising From Judgments of Death, Policy 3, stds. 2-1 to 2-8.3.) In the third or petition phase, after counsel has diligently investigated all potential

claims, counsel should prepare and file, if appropriate, a habeas corpus petition presenting all potentially meritorious claims.

Here, the plurality concludes that appellate counsel abandoned petitioner at the second step of this process: the duty to investigate those potential claims as to which counsel possesses triggering facts. According to the plurality, counsel was aware of triggering facts, yet he failed to seek funds from this court to conduct an investigation. I disagree. In my view, the petition for writ of habeas corpus offers no reason to believe that counsel was aware of triggering facts. As a result, he had no further duty to investigate.

The plurality furnishes a laundry list of 10 claims in the petition for writ of habeas corpus that, it contends, reveal "potentially disturbing aspects of petitioner's trial . . . ." (Plur. opn., *ante,* at p. 713.) The plurality asserts that triggering facts for "many" of these claims, which the plurality conveniently neglects to identify, "were either known to *petitioner* or exist in the appellate record," and that these claims "would certainly appear to have been 'potentially meritorious' for purposes of investigation and, if appropriate, for presentation to this court." (*Ibid.,* italics added.) But in determining whether appellate counsel abandoned petitioner, *petitioner's* knowledge of triggering facts is irrelevant: the only question is whether *counsel* was aware of such facts but failed to act on them.

As to nine of these ten claims mentioned in the plurality's list, there is no evidence before this court that counsel was aware of triggering facts, or that such facts appear in the appellate record.[1] Indeed, some of these claims are so patently unmeritorious that even if appellate counsel *had* known of triggering facts, he could reasonably have decided not to investigate them, because investigation was unlikely to lead to an "issue of possible merit." (Supreme Ct. Policies Regarding Cases Arising From Judgments of Death, Policy 3, std. 2-4.2.) For example, a competent appellate attorney could reasonably have found no need to investigate facts supporting petitioner's contention that one of the jurors committed misconduct by reading a letter

---

[1]On August 24, 1998, petitioner filed a "Motion for Leave to Supplement Timeliness Allegations," requesting 60 days to amend his timeliness allegations to bring them into compliance with *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311], and *In re Gallego, supra,* 18 Cal.4th 825, both filed by this court 3 weeks before petitioner's motion. This court took no action on the request, and today the plurality denies it as moot. (Plur. opn., *ante,* at p. 724, fn. 16.) Had a majority of the court agreed with me that petitioner has not shown abandonment by appellate counsel, I would have voted to grant this motion. (See *In re Robbins, supra,* 18 Cal.4th at p. 819 (conc. opn. of Kennard, J.) [stating that the "newly clarified timeliness pleading requirements" in *Robbins* should not be applied to bar claims in pending petitions "without affording the petitioner an opportunity to amend the petition, whenever possible, to cure the deficiencies"].)

sent by petitioner to the juror, because any conceivable misconduct arising from the juror's decision to read the letter was invited by petitioner. (See *People* v. *Hines* (1997) 15 Cal.4th 997, 1054 [64 Cal.Rptr.2d 594, 938 P.2d 388].) But the 10th claim, on which petitioner's claim of abandonment is primarily based, requires more careful consideration.

Petitioner contends that trial counsel was ineffective because he failed to conduct an adequate penalty investigation. Appellate counsel's declaration describes his discovery, after one of his associates had met with trial counsel and examined his files, of the following: "[T]rial counsel had conducted almost no penalty investigation. He had not interviewed any potential witnesses about [petitioner's] family, his life or his character. Nor had trial counsel obtained records and documents about [petitioner's] background."

Ordinarily, these are precisely the type of triggering facts that would necessitate a thorough investigation by habeas corpus counsel. In this case, however, petitioner insisted that his trial counsel should present no evidence at the penalty phase of his capital trial, because petitioner believed a sentence of life in prison without the possibility of parole was "unacceptable." The trial court went to great lengths to ensure that petitioner's decision not to present penalty phase evidence was knowing and intelligent: It appointed independent counsel to consult with petitioner and it appointed a psychiatrist, Dr. F.A. Matychowiak, to determine whether petitioner's decision not to present evidence at the penalty phase was a rational one. Dr. Matychowiak concluded that petitioner was of above-average intelligence, that he was "free of any specific disease or disorder that would preclude his being able to reason or understand his present circumstances or which would preclude his assisting intelligently in his own defense," and that his decision not to present evidence at the penalty phase was "a matter of wisdom rather than of sanity." Thus, any possible inadequacy in trial counsel's penalty phase investigation was irrelevant (because petitioner made a knowing and intelligent decision not to present penalty phase evidence at trial), and this court would, in my view, have denied a request by appellate counsel for funds to conduct the type of penalty phase investigation that should ordinarily have been performed by trial counsel. Therefore, appellate counsel did not abandon petitioner by failing to seek funds to conduct such an investigation.

The plurality makes much of a declaration in which appellate counsel, while conceding that he failed to investigate potential habeas corpus claims, attributes this failure to the pressures of other work rather than to the absence of information worthy of investigation. I do not agree that counsel's declaration establishes that he abandoned petitioner.

Counsel's failure to acknowledge the absence of triggering facts is hardly surprising. To state plainly that he was aware of no information worthy of investigation would put counsel in the position of arguing against the interests of his former client. In attributing his inaction to the press of other business, rather than to a lack of viable issues, counsel is merely demonstrating loyalty to his former client. Although the majority is correct that a heavy caseload cannot excuse an attorney's failure to discharge his habeas corpus duties, "counsel has a duty to investigate potential habeas corpus claims only if counsel has become aware of information that might reasonably lead to actual facts supporting a potentially meritorious claim." (Supreme Ct. Policies Regarding Cases Arising From Judgments of Death, Policy 3, std. 1-1.) Petitioner fails to show that counsel was aware of any such information.

In petitioner's appeal, counsel raised numerous claims of federal constitutional error. Although this court rejected those claims, they were not without substance; indeed, two justices of this court were of the view that petitioner was entitled to relief on *four* of these grounds. (See *People* v. *Sanders* (1990) 51 Cal.3d 471, 530-538 [273 Cal.Rptr. 537, 797 P.2d 561] (dis. opn. of Mosk, J., joined by Broussard, J.); *id.*, pp. 538-547 (dis. opn. of Broussard, J., joined by Mosk, J.).) Because these claims had been raised and rejected on appeal, petitioner could file a habeas corpus petition in federal court raising each of these claims without first filing a habeas corpus petition in this court. Thus, appellate counsel's decision not to file a habeas corpus petition did not deprive petitioner of the chance to litigate what were likely to be his strongest claims in federal court. With no triggering facts that would warrant additional habeas corpus investigation, appellate counsel could reasonably have concluded that post-appeal attempts to overturn petitioner's convictions and death sentence should focus on these claims.

Therefore, I would reject petitioner's contention that this court should excuse his delay in raising certain claims in his habeas corpus petition on the ground that his appellate counsel abandoned him.

**BROWN, J., Concurring and Dissenting.**—As Yogi Berra once—or more than once—said, " 'You've got to be very careful if you don't know where you are going, because you might not get there.' " (Araiza et al., *The Jurisprudence of Yogi Berra* (1997) 46 Emory L.J. 697, 746, fn. omitted; cf. *People* v. *Mendez* (1999) 19 Cal.4th 1084, 1105 [81 Cal.Rptr.2d 301, 969 P.2d 146] (conc. opn. of Brown, J.) [" ' "It's déjà vu all over again." ' "].)

I continue to adhere to the views expressed in my concurring and dissenting opinion in *In re Gallego* (1998) 18 Cal.4th 825, 842-853 [77 Cal.Rptr.2d

132, 959 P.2d 290] (*Gallego*). (See also *People* v. *Mendez, supra,* 19 Cal.4th at p. 1105 (conc. opn. of Brown, J.) ["Thousands upon thousands of more words, and still no closer to a workable standard."].) As with *Gallego, supra,* 18 Cal.4th 825, and *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311], today's efforts are "ill-advised and counterproductive . . . , creating a Byzantine system of procedural hurdles, each riddled with exceptions and fact-intensive qualifications, [which] only undermine[] their intended purpose [of integrity of judgments, finality, and comity]." (*Gallego, supra,* 18 Cal.4th at p. 842 (conc. and dis. opn. of Brown, J.).) Even the Attorney General has come to recognize that these attempts to clarify timeliness standards are at cross-purposes with the intent of procedural bars. At oral argument, he urged the court to stand by the principles set forth in *In re Clark* (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729], and reject untimely claims without parsing inquiry into "good cause" and "substantial delay" abstractions, because truly meritorious claims are preserved in any circumstance under the *Clark* exceptions. (*Id.* at pp. 797-798.)

I would discharge the order to show cause and deny all claims solely on the merits without preliminary consideration of whether petitioner has demonstrated "good cause" for any "substantial delay" in presenting the petition. I express no opinion on the majority's determinations regarding the relevance of appellate counsel's acts or omissions.

**BAXTER, J.**—I respectfully dissent.

Under our written policies in effect between 1989 and 1998, counsel appointed *at any time* to represent an indigent capital defendant on appeal had the specific additional obligation to undertake habeas corpus representation as well. (Supreme Ct. Policies Regarding Cases Arising From Judgments of Death (Policies), policy 3, former std. 1-1.) The Policies instruct that capital habeas corpus counsel must conduct a prompt investigation of potentially meritorious habeas corpus claims, then present such claims *without substantial delay,* i.e., within a reasonable time after the supporting facts were *or should have been* known. (Policies, stds. 1-1, 1-1.2.) If the petition's claims are substantially delayed under this standard, they *may be barred as untimely* (*id.,* std. 1-3) unless the petition establishes *good cause* "sufficient to *justify*" the delay (*id.,* std. 1-2, italics added).[1]

The plurality now contradict these clear principles. On the one hand, they find that the petition in this case, filed in November 1994, was indeed

---

[1]In *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311] (*Robbins*), we provided one example of circumstances that might "justify" substantial delay in presenting claims on habeas corpus. As we noted, in order to avoid the piecemeal presentation of claims, counsel might have good cause to postpone presentation of some already developed claims while a bona fide investigation of still other potentially meritorious claims was ongoing. (*Id.,*

"presented after a substantial delay." (Plur. opn., *ante,* at p. 705.) That determination appears indisputable. The capital crimes occurred in 1981, and the death judgment was rendered in 1982. In January 1983, we appointed Dennis Riordan as petitioner's counsel on appeal. We decided petitioner's automatic appeal in 1990, and Riordan thereafter remained counsel of record until he was relieved in June 1994. As the plurality make clear, habeas corpus duties devolved upon Riordan no later than June 1989, when our Policies went into effect. Yet aside from filing a confidential request for investigation funds in October 1989, Riordan did nothing toward the investigation and filing of a petition. The current petition fails to show that the claims now proffered neither were nor should have been known in time to present them at some earlier point during Riordan's tenure. (See *Robbins, supra,* 18 Cal.4th 770, 780.)

Nonetheless, the plurality hold that under our Policies, Riordan's "abandonment" of his duties on habeas corpus is itself good cause for the substantial delay. The plurality thus hold that our Policies make the *very creation of delay* its *own excuse.* Under the plurality's analysis, counsel appointed to pursue capital habeas corpus claims in timely fashion can prevent a finding of untimeliness simply by walking away from the duty of prompt action imposed by the appointment.

Try as they may, the plurality cannot avoid the mischievous conundrum created by this holding. If our Policies allow counsel to create timeliness by ignoring it, the requirement of timeliness itself loses all meaning.

The plurality acknowledge the importance of our timeliness Policies for capital habeas corpus petitions. These policies vindicate the strong societal interest that a valid criminal judgment become final and be carried out. They discourage abuse of the writ. And they serve our own institutional concerns with the management of our docket. The plurality also concede, as they must, that a condemned prisoner has no federal constitutional right to legal assistance, diligent or otherwise, in the investigation and presentation of a first petition for habeas corpus. Nonetheless, the plurality advance several reasons why we must excuse delay caused by counsel's "abandonment," and must consider on the merits all claims raised in a petition thus delayed. None of these reasons are persuasive.

First, the plurality reason that insofar as California has elected to afford appointed habeas corpus assistance to condemned prisoners, our timeliness Policies do not require us to tolerate the "abandonment" of duty by appointed counsel. In a related vein, the plurality insist that by "abandoning"

at pp. 805-806; see also *In re Clark* (1993) 5 Cal.4th 750, 767-770, 777 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*).)

the client, an appointed attorney leaves the client as though unrepresented by counsel. With respect to any such period of "abandonment," the plurality assert, we must therefore apply our timeliness guidelines as we would if the petitioner had no lawyer to assist him. Moreover, the plurality suggest, we must not penalize a faultless prisoner, who reasonably believed appointed counsel was looking after his interests, by refusing to consider claims delayed as a result of counsel's dereliction.

The ominous premise of each of these theories is one specifically rejected for federal constitutional purposes, i.e., that a capital prisoner has the *right* to the *effective* assistance of counsel on habeas corpus. (*Coleman* v. *Thompson* (1991) 501 U.S. 722, 752-754 [111 S.Ct. 2546, 115 L.Ed.2d 640]; *Wainwright* v. *Torna* (1982) 455 U.S. 586 [102 S.Ct. 1300, 71 L.Ed.2d 475] (*per curiam*).) Of course, the plurality concede the absence of a federal constitutional right, and they also refrain from finding any such entitlement under the California Constitution. Instead, they insinuate that because this court's policy, and now state statutory law, call for the provision of appointed habeas corpus counsel to indigent capital prisoners, a minimal guaranty of competent assistance is implied.

Even if there were a kernel of abstract logic in this view, its application in derogation of our timeliness standards is misguided in the extreme. This is because, in the upside-down world of death penalty law, counsel more often helps than hurts his client by *avoiding* the prompt pursuit of postconviction remedies. Circumstances usually dictate that counsel's best course in his condemned client's interest is to do nothing until action becomes absolutely necessary.

As Justice Kennard has pointed out, "[m]ost defendants who challenge criminal convictions collaterally by means of a petition for writ of habeas corpus are prisoners who are serving their sentence in a penal institution. The hope of early release gives them a strong incentive to expedite the filing of a habeas petition, and they usually have little or nothing to gain by delaying the process. But for inmates on death row seeking habeas relief, the situation is otherwise. They, unlike other prisoners, have not yet begun to 'serve' their sentence of death. Although a successful habeas petition by an incarcerated capital defendant may produce immediate benefits in the form of release from prison, retrial, or reduction of sentence, a court's final rejection of all habeas issues generally removes the last judicial barrier to execution. Because courts may grant stays of execution during the pendency of habeas corpus proceedings, prisoners facing a death sentence may seek to prolong their lives by ensuring that such proceedings are never finally concluded. Thus, death row inmates have an incentive to delay assertion of

habeas corpus claims that is not shared by other prisoners." (*Clark, supra,* 5 Cal.4th 750, 806 (conc. & dis. opn. of Kennard, J.).)

This case starkly illustrates the point. Events here followed an all-too-familiar pattern among our older capital matters. As the plurality explain, our Policies became effective in June 1989. We affirmed petitioner's death judgment on appeal in September 1990, and the United States Supreme Court denied certiorari in May 1991. Riordan, as petitioner's counsel throughout this period, "did not file a petition for a writ of habeas corpus in this court. Thereafter, the People obtained an order from the superior court authorizing petitioner's execution. ([Pen. Code,] § 1227.) Petitioner success-fully moved in federal court for a stay of the proceedings and appointment of new counsel. Newly appointed counsel subsequently filed a petition for a writ of habeas corpus in federal court on December 20, 1993. (*Sanders* v. *Vasquez,* CV-F-92-5471-REC-P.) After the People moved successfully to dismiss the petition for failure to exhaust state remedies, petitioner filed a petition for a writ of habeas corpus with this court on November 7, 1994." (Plur. opn., *ante,* at p. 702.)

Riordan, one of this state's leading specialists in representing condemned prisoners, vehemently denies his inaction had a tactical purpose. Yet by doing nothing until an execution date was set, then stepping aside while new counsel obtained a federal stay and maneuvered in federal court, Riordan actually bought his death row client the most precious of commodities— time. He not only forestalled a *scheduled execution,* but also substantially postponed the moment at which any final rejection of petitioner's claims would remove them as an obstacle to the pending death sentence.[2]

It is just such concerns, unique to capital cases, that have informed our timeliness Policies, which specifically define the obligation of appointed capital habeas corpus counsel to investigate and present all potentially meritorious claims *without substantial delay.* The plurality eviscerate the Policies' purposes by concluding that counsel's very failure to follow these

---

[2]Of course, as noted by Justice Kennard in *Clark, supra,* 5 Cal.4th 750, a delayed judicial finding of *actual merit* in one or more of the petition's claims might postpone the moment of petitioner's "release from prison, retrial, or reduction of sentence." (*Id.,* at p. 806 (conc. & dis. opn. of Kennard, J.).) But where the alternative to such possible success is certain execution, tactical incentives still weigh strongly toward delay.

Moreover, Riordan's inaction has provided his client with another important tactical benefit. By thus ensuring that we will not impose *our own* procedural bar of untimeliness against the petition's claims, but will reject those claims, if at all, solely on the merits, Riordan has also deprived the Director of Corrections of a possible procedural defense against identical claims raised in a later *federal* petition. (See, e.g., *Coleman* v. *Thompson, supra,* 501 U.S. 722, 729-730 [111 S.Ct. 2546, 2554] [rule barring federal habeas corpus consideration of claims rejected by state court on independent and adequate state procedural grounds].)

clear rules is its own excuse for the resulting tardiness of a petition for habeas corpus.[3]

The plurality are careful to admonish that delay for its own sake is not a permissible tactic. They "warn[]" that we will report future cases of "abandonment" to the State Bar and may also seek to recoup unearned fees and expenses. (Plur. opn., *ante*, at p. 723.) These steps are highly appropriate, but they would be so whether or not we also accepted counsel's dereliction as grounds to excuse untimeliness. The availability and use of these sanctions should alone be ample proof that we do not tolerate counsel's omissions. On the other hand, by holding that "abandonment" excuses the delayed presentation of a petition for habeas corpus, the plurality seriously undermine the hope that the sanctions they describe will deter counsel dedicated to prolonging the lives of their condemned clients.

Despite all this, the plurality insist their result is necessary to resolve the "tension" between "society's desire for finality of its criminal judgments and its insistence the person being punished is actually guilty of the crimes" (plur. opn., *ante*, at p. 704), and to preserve the writ of habeas corpus as "a final possibility for prisoners to prove their convictions were obtained unjustly" (*ibid.*). Such is not the case. Our existing capital habeas corpus rules already balance the competing interests, and they provide ample assurance that meritorious claims of innocence, or of fundamental injustice, will be grounds for relief on habeas corpus whenever presented.

---

[3] In finding that appointed counsel's entire failure to pursue efforts toward a first habeas corpus petition should excuse the petition's substantial delay, the plurality make much of certain statements in *Clark, supra*, 5 Cal.4th 750. There we suggested that counsel's incompetent failure to include *all available claims* in a *first* petition may be grounds for our consideration of an otherwise barred *second* petition. We reasoned in part that "[r]egardless of whether a constitutional right to counsel exists, a petitioner who *is* represented by counsel when a petition for writ of habeas corpus is filed has a right to assume that counsel is competent and is presenting all potentially meritorious claims." (*Id.*, at p. 780, italics in original.) However, *Clark* has no application beyond its narrow context. *Clark* meant, at most, that we would not bar relief on a meritorious claim simply because counsel's inadequacy had prevented its presentation in a prior petition. Nothing in *Clark* suggests that *meritless* claims in a second petition must be *denied solely on the merits* simply because counsel's incompetence led to their exclusion from a prior petition. More fundamentally, *Clark*'s comments did not extend to the distinct issue of substantial delay, and in particular, the indefinite delay caused by counsel's entire failure to undertake habeas corpus representation. There is ample ground to distinguish the two situations. Even if, as *Clark* indicated, a capital prisoner has a "right to assume" the *completeness* of a habeas corpus petition *actually filed* in his behalf, this does not imply a similar right to assume the competence of an attorney who has done nothing. Moreover, we can afford to be more lenient when piecemeal presentation is the only procedural difficulty with a meritorious claim. It is prolonged and inexcusable delay in the presentation of claims that represents the greatest threat to the fair and orderly administration of our laws governing capital punishment.

In the first place, as the plurality indicate, our long-standing practice, now codified in statutory law, is to provide counsel to assist every indigent capital defendant, not only on direct appeal, but also in the pursuit of a collateral attack on the judgment. Besides compensating such counsel for their own legal services, we furnish funds to cover the miscellaneous costs and expenses of investigating potential claims. By doing these things, we seek to promote *both* fairness *and* expedition by maximizing the incarcerated defendant's opportunity to promptly discover, develop, and present all sound bases which may exist for relief on habeas corpus.

But even after counsel has been appointed, our timeliness Policies impose no absolute deadline or limitations period for the presentation of claims. Instead, they begin to count delay only from the time a claim *was or should have been discovered*. And even when a claim is not presented with reasonable promptness after that, it is still timely if there is a sound and acceptable explanation to justify the delay. Any claim that is timely by these standards may be considered on its merits, unless the claim is simply not cognizable on habeas corpus or some other procedural bar applies. For example, under the rubric of ineffective assistance of trial counsel, a timely petition can assert almost any form of garden-variety trial error.

But when claims *have* been unduly delayed, the state's countervailing interests in a final and enforceable judgment, and in avoiding both habeas corpus litigation and retrial of the underlying charges, assume much greater importance. Those interests justify substantial limits on a petitioner's right to raise collateral challenges that were postponed solely because of counsel's inaction.

Even here, however, we have recognized that the state's interests are not strong enough to prevent habeas corpus relief against a "fundamental miscarriage of justice." The petitioner may establish such a fundamental miscarriage *at any time* by showing (1) he is actually innocent, (2) his trial included constitutional flaws so basic that they produced an irrational guilt verdict, (3) his penalty trial was so factually distorted that it produced an irrational death verdict, or (4) he was sentenced to death under an invalid law. (*Clark, supra,* 5 Cal.4th 750, 797-798.)

This logical, fair, and well-established balance is upset, rather than vindicated, by the plurality's new and misguided theory, which threatens the bedrock underlying the timeliness rules themselves. I remain unpersuaded that counsel's "abandonment" of the duties imposed by our Policies is an excuse for the resulting delay in presenting a petition for habeas corpus. I would hold that petitioner has failed to show good cause for the petition's

substantial delay, and that its claims are therefore untimely. Having done so, I would discharge the order to show cause.[4]

---

[4]While I dissent from the plurality's holding that habeas counsel's "abandonment" of duty constitutes good cause for the delayed filing of a later habeas corpus petition, I heartily endorse those passages of the plurality opinion that seek, once again, to explain the *limitations* on counsel's obligation to investigate and present capital habeas corpus claims. As the *plurality opinion makes clear, counsel neither must nor should conduct an "unfocused"* investigation (plur. opn., *ante*, at p. 707); may cease efforts without filing a petition if reasonable investigation discloses no potentially meritorious claims (*ibid.*); and should, in the interest of " 'effective . . . advocacy,' " present *only* those claims that are potentially meritorious, rather than all possible claims (*id.*, at p. 713, fn. 8).