Filed 11/3/15  In re Tibbs CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re TODD JOSE TIBBS<br><br>on<br><br>Habeas Corpus. | D067841<br><br>(San Bernardino County<br> Super. Ct. Nos.<br> FSB703578, FSB800199) |

Original proceeding on a petition for writ of habeas corpus.  Petition granted in part and denied in part with directions.

Hilary Potashner, Acting Federal Public Defender, Alexandra W. Yates, John Stafford Crouchley, Deputy Federal Public Defenders, under appointment by the United States District Court, for Petitioner.

Kamala D. Harris, Attorney General, Julie L Garland, Assistant Attorney General, Kevin Vienna, Angela M. Borzachillo, Deputy Attorneys General, for Respondent.

This case is before us a second time.  In the prior case, Brandon Parks-Burns appealed his murder conviction and codefendant Todd Jose Tibbs appealed his premeditated attempted murder conviction.  (*People v. Parks-Burns et. al.* (January 11,

2013, D059348) [nonpub. opn.] review den. Apr. 17, 2013, S208695 (*Tibbs I*).)[1] Tibbs contended, among other things, that the trial court prejudicially failed to instruct the jury on premeditation, deliberation, and willfulness on the attempted murder charge and on the lesser included offense of attempted involuntary manslaughter. We affirmed the judgment.

In this writ petition, Tibbs reiterates his claim of instructional error, relying on *People v. Banks* (2014) 59 Cal.4th 1113 (*Banks*), which postdates *Tibbs I*. He further contends (1) he is factually innocent of attempted murder based on purported new evidence included in two submitted declarations; (2) at trial, the prosecution's gang expert improperly testified regarding the gang enhancement; and, (3) the abstract of judgment was erroneous. Finding merit in Tibbs's last contention only, we grant the writ petition as to that issue and deny the petition in all other respects. The trial court is to amend the abstract of judgment.

PROCEDURAL BACKGROUND

The People alleged in an information that Tibbs and Parks-Burns committed the first degree murder of Charles Marshall. (Pen. Code,[2] § 187, subd. (a); count 1.) They also alleged Tibbs committed the attempted murder of Sequwan Lawrence and that Tibbs

---

[1]     We take judicial notice of the trial court record and our decision in *Tibbs I*. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).) Although that opinion was not published, and thus has no precedential value, we mention it because it states reasons for a decision affecting the same defendant in another action (Cal. Rules of Court, rule 8.1115(b)(2))— and involves the same facts. We also grant respondent's request to take judicial notice of Parks-Burns's juvenile court records.

[2]     Statutory references are to the Penal Code unless otherwise stated.

committed that crime willfully, deliberately and with premeditation; for the benefit of or in association with a criminal street gang; and he personally and intentionally discharged a firearm during its commission. (§§ 187, subd. (a), 664; count 2.) The first jury deadlocked on the murder count as to both defendants, and the court declared a mistrial as to that count. However, the jury convicted Tibbs of attempted murder. The court sentenced Tibbs to a determinate term of 20 years plus an indeterminate term of 15 years to life on the attempted murder count and its enhancements. At the start of Tibbs's second trial for the murder of Charles Marshall, Tibbs pleaded guilty to the lesser included offense of voluntary manslaughter. In exchange, the court sentenced him to a six-year term to be served concurrently with the term imposed after the first trial.[3]

## FACTUAL BACKGROUND

Sequwan Lawrence testified at trial that in the days before the September 7, 2007 attempted murder occurred, he had become "kind of" upset that 22-year-old Tibbs, a gang member, was dating Lawrence's then 15-year-old sister, Mariam Park Lawrence (Mariam). Mariam had threatened to have Tibbs beat him up. Lawrence also testified Tibbs had confronted him with a gun approximately two weeks before the attempted murder.

Lawrence testified that on the night of the attempted murder, he was outside his residence with his girlfriend, his brother, and a cousin called "CJ." Tibbs and Parks-

---

[3]    A second jury convicted Parks-Burns of first degree murder and found true allegations that a principal personally and intentionally discharged a firearm, causing death (§ 12022.53, subd. (d)), and the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b).)

3

Burns approached and pushed Lawrence's brother and CJ against a car. Parks-Burns first held a gun to CJ's face; later, the gun was pointed in Lawrence's face. Lawrence grabbed the gun, which fell to the ground. Immediately afterwards, Tibbs pointed the gun at Lawrence, who restrained Parks-Burns and hid behind him to avoid getting shot by Tibbs. Lawrence heard a gunshot, eventually released Parks-Burns, and went home. On cross-examination, defense counsel questioned Lawrence about whether a gun was used in the incident; Lawrence insisted "there was a gun."

On the night of the incident, San Bernardino City Police Officer Jessie Ludikhuize responded to the crime scene and interviewed Lawrence, who stated that at least twice that evening Parks-Burns and Tibbs had passed by Lawrence and his companions before confronting them. Lawrence reported that during the confrontation Parks-Burns had pointed a gun at Lawrence's head, saying, "[Y]ou're going to get killed now." Lawrence grabbed the gun and struggled with Parks-Burns. The gun fell and Lawrence heard a gunshot that missed him. Lawrence turned around, saw Tibbs pointing a gun at him, and realized a shot had been fired at him. Tibbs shouted his gang's name, "18th Street." Lawrence identified both Parks-Burns and Tibbs in field showups that night.

Lawrence's girlfriend, Kianna Thomas, testified at trial that she did not remember much about the incident, including whether anyone had used a gun. But according to San Bernardino City Police Officer Joseph Shuck, when he had interviewed Thomas that night, she had said Parks-Burns initially asked Lawrence and CJ "where they're all from." Parks-Burns next pointed a gun to CJ's head, but Tibbs told Parks-Burns to shoot Lawrence first. Thomas had said Parks-Burns and Lawrence got into a "tussle," the gun

4

fell, and Tibbs shot at Lawrence. Thomas also identified Parks-Burns and Tibbs in field showups that night.

Gang expert San Bernardino City Police Detective Travis Walker testified Tibbs was a member of the 18th Street gang who yelled his gang's name upon firing the gun. Detective Walker added that Tibbs's shooting at Lawrence served to further the gang's reputation.

The court instructed the jury regarding the definition of the terms "willfully," "deliberately" and "premeditation" with CALCRIM No. 521, in connection with the murder count: "A defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if he intended to kill. The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before committing the act that caused death. [¶] The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection. The length of time alone is not determinative."

The court did not instruct the jury on premeditation with CALCRIM No. 601 on the attempted murder charge.[4]

During closing arguments, Tibbs's attorney questioned whether a gun was used in the attempted murder: "The question—after you deal with the question whether this event occurred, whether there was a gun involved—even if there was a gun involved to convict someone of an attempted murder you have to find what the law calls a specific intent, not just a willy-nilly someone shot a gun into the ground or shot a gun into the air, specific intent to kill, and then you have to ask yourself if Mr. Tibbs was there and if Mr. Tibbs had a gun and if Mr. Tibbs decided he had a specific intent to kill and he's four or five feet away from someone, why is Mr. Lawrence in here testifying?  Not only is he not dead, he doesn't have any bullet holes on him.  He doesn't have any gunshot residue on him.  [¶]  That circumstantial evidence suggests there was no intent, no attempt to kill Mr. Lawrence and in fact the other evidence suggests that there wasn't even a gun there. Now, the first call was man with a gun.  . . .  [¶]  . . .  Do you think maybe someone is exaggerating to get the police out there?  Could that be the explanation for why we got this man with a gun call?"

_____

4      But that instruction defines the terms "willfully," "deliberated" and "premeditation" in substantially identical terms as they are defined in CALCRIM No. 521.  "(The defendant/_____ <insert name or description of principal if not defendant>) acted willfully if (he/she) intended to kill when (he/she) acted.  (The defendant/_____ <insert name or description of principal if not defendant>) deliberated if (he/she) carefully weighed the considerations for and against (his/her) choice and, knowing the consequences, decided to kill. (The defendant/_____ <insert name or description of principal if not defendant>) acted with premeditation if (he/she) decided to kill before completing the act[s] of attempted murder."  (CALCRIM No. 601.)

Defense counsel continued:  "The witnesses testified that they don't remember. Now one explanation for witnesses saying I don't remember is they're scared to tell the truth.  Another explanation is they're scared to admit that they lied in the first place; right?  If Mr. Lawrence and his girlfriend said there was a gun, said there was a shooting and it wasn't true, wouldn't they have some reservations about coming in here and saying yes, that guy tried to kill me?  Of course they would."

Defense counsel added, "So what's the explanation for no gunshot residue in this incident?  Either Mr. Tibbs was tested and it was negative.  There was none; that he actually fired a gun and there was no gunshot residue when the police arrive some five minutes later or the police didn't even believe there was a shot fired so they didn't bother doing gunshot residue; right?  Can't find gun.  Can't find the shell casing.  Can't find a bullet hole.  They don't think someone with a semiautomatic weapon who has a specific intent to kill fires one shot and misses and doesn't fire anymore.  They didn't believe it."

The jury's completed verdict form stated:  "We the jury in the above-entitled action having found the defendant, Todd Jose Tibbs, guilty of the offense of attempted murder as charged in count 2 of the complaint[,] [w]e *further find the special allegation that the attempted murder was committed willfully, deliberately and with premeditation to be:  . . . True*[.]"  (Italics added, some capitalization omitted.)

*Tibbs I*

Tibbs contended on direct appeal that (1) the trial court violated his constitutional right to a fair trial by denying his motion to sever the charges against him from those against Parks-Burns; (2) insufficient evidence supported the allegation he acted with

7

premeditation and deliberation in committing the attempted murder; and (3) the trial court erroneously failed to instruct the jury on premeditation, deliberation and willfulness as to both the attempted murder charge and on the lesser included offense of attempted voluntary manslaughter.[5] We affirmed the judgments on January 11, 2013.

*Postappeal Proceedings*

In April 2013, the California Supreme Court denied review of *Tibbs I*. (*Tibbs I, supra,* D059348.) In April 2014, Tibbs filed a writ of habeas corpus in the federal district court on the same grounds raised on direct appeal: (1) he was denied his constitutional right to a fair trial when the trial court denied his motion to sever the trial on the murder charge from that of the attempted murder charge; (2) his due process rights were violated because insufficient evidence supported his conviction for attempted willful, deliberate, premeditated murder; (3) the trial court erroneously failed to instruct the jury on premeditation, deliberation and willfulness on the attempted murder charge; and on the lesser included offense of attempted voluntary manslaughter.

The magistrate appointed counsel for Tibbs and granted him a stay to renew his claim of instructional error in this court in light of *Banks, supra,* 59 Cal.4th 1113.

---

5    Parks-Burns contended the trial court erroneously (1) failed to instruct the jury about accomplice testimony, thus denying him due process and a jury trial under the federal Constitution; (2) admitted irrelevant evidence regarding the attempted murder of Lawrence at Parks-Burns's trial for murder; (3) sentenced him to a cruel and unusual term of 50-years to life instead of nine years, simply because he exercised his right to a jury trial; and (4) imposed a victim restitution award without making a finding that substantial evidence supported the amount. Tibbs joined in Parks-Burns's contentions as applicable.

DISCUSSION

I. *The Trial Court Did Not Err in Instructing the Jury*

Relying on *People v. Banks, supra,* 59 Cal.4th 1113, Tibbs contends the trial court

prejudicially erred by failing to instruct the jury on the meaning of "willful," "deliberate,"

and "premeditated" as to the attempted murder charge. The People counter that Tibbs's

instructional error claim is procedurally barred because we rejected it on direct appeal;

*Banks* does not announce a new law impacting Tibbs's conviction, and *Banks* is

distinguishable on its facts. Our resolution of this issue requires a close analysis of

*Banks*, to which we now turn.

A. *Legal Principles*

The willful, deliberate, and premeditated nature of an offense is the functional

equivalent of an element of that offense. As such, it must be submitted to the jury and

proved beyond a reasonable doubt. (*People v. Banks, supra,* 59 Cal.4th at p. 1152.) The

trial court's failure to properly instruct on an element of an offense may be federal

constitutional error because such an error violates the defendant's due process and Sixth

Amendment rights to have a jury adjudicate guilt beyond a reasonable doubt. Such an

error is harmless "if, after conducting a thorough review of the record, the court

determines beyond a reasonable doubt that the jury verdict would have been the same

absent the error." (*Banks,* at p. 1153.)

In *Banks*, the defendant was tried for murder of two victims and attempted murder

of another victim. He was acquitted of one of the murder charges. In an incident

involving two different victims, the defendant was convicted of murdering one of them

9

by shooting him in the back of the head at close range upon entering the house, and firing a parting shot to that victim's head, presumably to ensure he was dead. (*Banks, supra,* 59 Cal.4th at p. 1154.) The defendant was charged with attempted murder of another victim because as defendant was leaving the house, and from a distance of approximately six feet, he fired one shot that grazed her ear. (*Id.* at pp. 1124-1125, 1153.)

The defendant in *Banks* alleged that as to the attempted murder charge, the information did not state his conduct was "deliberate" or "premeditated;" therefore, it was constitutional error for the prosecutor to put that issue before the jury. The California Supreme Court noted this omission from the charging document was significant because the sentence for attempted murder is a determinate term of five, seven or nine years; by contrast, the sentence for attempted willful, deliberate, and premeditated murder is life without the possibility of parole. (*Banks, supra,* 59 Cal.4th at pp. 1150-1151.) Nonetheless, the *Banks* court assumed without deciding that the defendant was properly charged with willful, deliberate, and premeditated attempted murder. (*Id.* at p. 1152.)

Instead, the *Banks* court decided the case on instructional error grounds. The trial court's instruction with CALJIC No. 8.20 (predecessor to CALCRIM No. 521) regarding "deliberate," "willful," and "premeditated" was specifically limited to only one charge of murder; but as to that victim, the jury acquitted the defendant. Therefore, the Supreme Court ruled the trial court erred by not separately instructing the jury regarding "deliberate," "willful," and "premeditated" with the analogous CALJIC No. 8.67 (predecessor to CALCRIM No. 601), which applied in the context of an attempted murder charge of a different victim. (*Banks, supra,* 59 Cal.4th at pp. 1151-1152.) The

10

Supreme Court reasoned that "the jury would have had little cause to consider what the critical terms 'deliberate' and 'premeditated' mean in connection with that charge. Thus, when the jury was deliberating on the attempted murder charge, the *only* instructions it likely would have considered are the ones the court gave regarding regular attempted murder, which did not explain the standard for a finding of deliberation and premeditation." (*Id.* at p. 1154.)

The Supreme Court concluded that as to the second victim it could not determine beyond a reasonable doubt that the defendant acted deliberately and with premeditation as opposed to as an afterthought. Therefore, under the harmless error test, it ruled prejudicial the absence of a jury instruction regarding the meaning of "willful," "deliberate," and "premeditated" as to the attempted murder conviction. (*Banks, supra,* 59 Cal.4th at pp. 1153-1154.)

We review challenges to the adequacy of jury instructions under the independent or de novo standard of review. (*People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) Reviewing courts should interpret jury instructions "so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.) " 'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' " (*People v. Yoder* (1979) 100 Cal.App.3d 333, 338.) The jury instructions' correctness is determined from the court's entire charge and not just by

11

considering isolated parts of an instruction. (*People v. Rhodes* (1971) 21 Cal.App.3d 10, 20; *People v. Salas* (1975) 51 Cal.App.3d 151, 156.) The necessary element of a jury charge can "be found in two instructions rather than in one instruction," and this "does not, in itself, make the charge prejudicial." (*Rhodes*, at p. 20.) Thus, an essential element "in one instruction may be supplied by another or cured in light of the instructions as a whole." (*People v. Galloway* (1979) 100 Cal.App.3d 551, 567-568.)

B. *Analysis*

Under *Banks*, the question we decide is whether on the facts of this case we can be "certain beyond a reasonable doubt that the jury would have found defendant guilty of attempted willful, deliberate, and premeditated murder had it been properly instructed. In order to find defendant guilty of that charge, the jury would have had to conclude that his acts were the result of ' " ' " 'careful thought and weighing of considerations' " ' " ' rather than an ' " ' "unconsidered or rash impulse." ' " ' [Citations.] That standard is not met by showing only that a defendant acted willfully and with specific intent to kill. 'By conjoining the words "willful, deliberate, *and* premeditated" in its definition and limitation of the character of killings falling within murder of the first degree the Legislature apparently emphasized its intention to require as an element of such crime substantially more reflection than may be involved in the mere formation of a specific intent to kill.' " (*Banks, supra,* 59 Cal.4th at p. 1153.)

We conclude this case is distinguishable from *Banks, supra,* 59 Cal.4th 1113. Here, the trial court instructed the jury with CALCRIM No. 521 regarding "deliberate, willful, and premeditated" without limiting the jury's use of the instruction to the murder

12

charge. Indeed, the court separately instructed the jury to "[p]ay careful attention to all of these instructions and consider them together"; and "[u]nless I tell you otherwise, all instructions apply to each defendant." (CALCRIM No. 203.) Furthermore, CALCRIM No. 521's definition of "deliberate," "willful," and "premeditated" is the same as that of the omitted CALCRIM No. 601 instruction regarding attempted murder. Therefore, the jury would have applied the same definitions had it been instructed with CALCRIM No. 601.

The *Banks* standard for finding premeditated attempted murder is met here, and reflected in our analysis in *Tibbs I*, which shows Tibbs acted with substantial reflection: "Tibbs and Lawrence had a dispute because Tibbs dated Lawrence's sister, who was a minor. Approximately two weeks before the attempted murder, Tibbs had displayed a gun while confronting Lawrence. The night of the attempted murder, Tibbs and Parks-Burns had twice passed the area where Lawrence was located before deciding to confront Lawrence and his party. At the start of the incident, when Parks-Burns aimed his gun at someone else first, Tibbs instructed him to aim at Lawrence instead. When the gun fell from Parks-Burns's hands, Tibbs got it and fired it at Lawrence. At several junctures during that chain of events, Tibbs had [] opportunities to reflect and deliberate, and each time he elected to proceed with targeting Lawrence. The logical conclusion is that Tibbs intended to shoot at Lawrence, and thus his attempted murder was deliberate, willful and premeditated." (*Tibbs I, supra,* D059348, at p. 16.)

Having reviewed the record evidence, the arguments of counsel and the jury's verdict form stating the jury found true the allegation the premeditated murder was

13

willful, deliberate and premeditated, we conclude we can "be certain beyond a reasonable doubt that the jury would have found [Tibbs] guilty of attempted willful, deliberate and premeditated murder had it been properly instructed." (*Banks, supra,* 59 Cal.4th at p. 1153.)

## II. *Tibbs's Actual Innocence Claim Fails*

Tibbs argues he is actually innocent of premeditated attempted murder. He proffers a declaration from Mariam stating: "On the evening of September 7, 2007, I met Todd Tibbs down the street from my house to give him a gift. He was with Brandon Parks[-]Burns. After giving Todd the gift I saw Todd and Brandon walk up the street towards the direction of my house. My brother, Sequwan, and his girlfriend were hanging out across the street from my house. [¶] When Todd and Brandon got to the part of the street in front of my house, I saw them get into an argument with my brother. The argument turned into a fight. [¶] I saw my Dad, Don Lawrence[,] come out of our house to break up the fight. Soon after I saw Todd and Brandon leave the scene. I never heard a gun go off. I never saw a gun."

Tibbs also proffers a declaration from Parks-Burns stating: "I recall the incident involving our altercation with Sequwan Lawrence in September 2007. That was the incident that resulted in one of the charges against us. [¶] . . . There was never a gun drawn during that incident. We fought for a few minutes then broke it off." Tibbs contends the declarations suffice to warrant habeas relief, and we should remand the matter for the trial court to conduct an evidentiary hearing in light of the declarations.

14

The People argue Tibbs's actual innocence claim is untimely because he did not diligently pursue it in *Tibbs I* and, on the merits, neither declaration provides newly discovered evidence or undermines the jury's verdict; rather, the declarations are impeachable and unreliable.

A.  *Legal Principles*

"Because a petition for a writ of habeas corpus seeks to collaterally attack a presumptively final criminal judgment, the petitioner bears a heavy burden initially to *plead* sufficient grounds for relief, and then later to *prove* them."  (*People v. Duvall* (1995) 9 Cal.4th 464, 474.)  In habeas corpus collateral attacks, "all presumptions favor the truth, accuracy, and fairness of the conviction and sentence; *defendant* thus must undertake the burden of overturning them."  (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1260.)

Further, any new evidence a habeas petitioner attempts to interject as a collateral attack on the judgment must be " 'evidence that could not have been discovered with reasonable diligence prior to judgment.' "  (*In re Hardy* (2007) 41 Cal.4th 977, 1016.)  The newly discovered evidence will only warrant habeas corpus relief if it " 'will completely undermine the entire structure of the case upon which the prosecution was based,' " and if the evidence is credited, it must "point unerringly to innocence."  (*In re Lawley* (2008) 42 Cal.4th 1231, 1239.)  Under this standard, "evidence which is uncertain, questionable or directly in conflict with other testimony does not afford a ground for relief."  (*In re Lindley* (1947) 29 Cal.2d 709, 722.)  If "a reasonable jury could have rejected" the new evidence, the petitioner has not satisfied his burden.  (*In re Clark*

15

(1993) 5 Cal.4th 750, 798, fn. 33.) This is because "[a] conviction obtained after a constitutionally adequate trial is entitled to great weight." (*In re Lawley*, *supra*, at p. 1240.)

B. *Analysis*

(i) *Mariam's Declaration*

In his petition, Tibbs does not claim the material included in Mariam's declaration was timely discovered; rather, he effectively concedes it was untimely, but obviates a discussion of that issue by raising an ineffectiveness assistance of counsel claim. Tibbs asserts in a footnote: "[T]o the extent [Mariam] could have been called as a defense witness but was not, trial counsel's failure to do so constitutes ineffective assistance of counsel."

"To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was deficient and fell below an objective standard of reasonableness and (2) it is reasonably probable that a more favorable result would have been reached absent the deficient performance. [Citation.] A reasonable probability is a 'probability sufficient to undermine confidence in the outcome.' " (*People v. Jones* (2013) 217 Cal.App.4th 735, 746-747.)

The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct." (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).) "Judicial scrutiny of counsel's performance must be highly deferential." (*Id.* at p. 689.) "[E]very effort [must] be made to eliminate the distorting effects of hindsight." (*Ibid.*) "Failure to make the required

16

showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." (*Id.* at p. 700.) In considering a claim of ineffective assistance of counsel, it is not necessary to determine " 'whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " (*In re Fields* (1990) 51 Cal.3d 1063, 1079, quoting *Strickland,* at p. 697.) It is not sufficient to show the alleged errors may have had some conceivable effect on the trial's outcome; the defendant must demonstrate a "reasonable probability" that absent the errors the result would have been different. (*People v. Williams* (1997)16 Cal.4th 153, 215; *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.)

We need not discuss whether Tibbs's trial counsel and appellate counsel provided deficient performance by not obtaining Mariam's testimony earlier or not raising on direct appeal a claim about the absence of Mariam's testimony. Instead, we proceed to a prejudice analysis and conclude it is not reasonably likely that Tibbs would have obtained a different result otherwise. Even giving Tibbs the full benefit of Mariam's declaration, her statement about not seeing a gun during the incident would be evaluated at trial in light of the court's standard jury instruction: "Do not automatically reject testimony just because of inconsistencies or conflicts. Consider whether the differences are important or not. People sometimes honestly forget things or make mistakes about what they remember. Also, two people may witness the same event yet see or hear it differently." (CALCRIM No. 226.) Here, defense counsel argued to the jury a likelihood existed that

17

no gun was used in the incident. But the jury was not persuaded. At trial, Mariam would also be subject to cross examination about her allegiances to Tibbs, her boyfriend who was a gang member, and who she had threatened would harm her brother. It is not reasonably likely Tibbs would have received a different result even if the jury had heard the information included in Miriam's declaration.

Mariam's posttrial declaration having failed to meet the threshold for an ineffective assistance of counsel claim, a fortiori, it does not meet the higher standard set forth above for newly discovered evidence. (*People v. Gonzalez, supra,* 51 Cal.3d 1179.) In contrast with ineffective assistance claims, "[t]he high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged." (*Strickland*, *supra,* 466 U.S. at p. 694.)

In *In re Branch* (1969) 70 Cal.2d 200, the California Supreme Court stated: "[T]he term 'new evidence' . . . should be held to include any evidence not presented to the trial court and which is not merely cumulative in relation to the evidence which *was* presented at trial. This does not mean that a defendant is entitled to a hearing on habeas corpus merely by producing some evidence tending to show his innocence not presented at his trial."[6] (*Id.* at p. 214.) The court subsequently explained that this "language should not be read to imply that a petitioner may routinely use habeas corpus proceedings to

---

[6] Although the passage just quoted refers to a hearing on habeas corpus, nothing in the opinion suggests the court's definition of what constitutes new evidence is limited to the preliminary determination of whether to issue an order to show cause or hold an evidentiary hearing.

18

reassess unsuccessful tactical decisions at trial; the expressed concern is for the *innocent* defendant. Accordingly, a habeas corpus petitioner must first present newly discovered evidence that raises doubt about his guilt." (*In re Hall* (1981) 30 Cal.3d 408, 420.) The mere existence of the conflict does not, without more, warrant the granting of relief. In every case where defendant has been convicted and seeks, in a subsequent habeas corpus proceeding, to establish innocence with new evidence, such a conflict will exist because of the evidence of guilt received at trial. (*In re Branch, supra,* at p. 215.)

"The standard for determining whether to afford prisoners habeas corpus relief on the ground that newly discovered evidence demonstrates actual innocence is . . . established. Under principles dating back to *In re Lindley, supra,* 29 Cal.2d 709, '[a] criminal judgment may be collaterally attacked on habeas corpus on the basis of newly discovered evidence if such evidence casts "fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine the entire prosecution case and point unerringly to innocence or reduced culpability. [Citations.]" [Citation.] "[N]ewly discovered evidence does not warrant relief unless it is of such character 'as will completely undermine the entire structure of the case upon which the prosecution was based.' " ' " (*In re Lawley, supra,* 42 Cal.4th at pp. 1238-1239.) A petitioner carries a "heavy burden of demonstrating he is actually innocent. ' "Depriving" an accused of facts that "strongly" raise issues of reasonable doubt is not the standard. Where newly discovered evidence is the basis for a habeas corpus petition, as alleged by defendant, the newly discovered evidence must "undermine[ ] the prosecution's entire case. It is not sufficient that the evidence might

19

have weakened the prosecution case or presented a more difficult question for the judge or jury." ' " (*In re Hardy, supra*, 41 Cal.4th at p. 1017.)

Because Mariam's declaration is merely "some evidence tending to show his innocence not presented at his trial" (*In re Branch, supra*, 70 Cal.2d at p. 214), Tibbs is not entitled to an evidentiary hearing. Moreover, Mariam's declaration does not warrant habeas relief because it does not "point unerringly to innocence or reduced culpability" or " 'completely undermine the entire structure of the case upon which the prosecution was based.' " (*In re Lawley, supra,* 42 Cal.4th at p. 1239.)

(ii) *Parks-Burns's Declaration*

Tibbs claims that Parks-Burns was legally unavailable to testify at trial because he was a codefendant; therefore, his declaration that there "was never a gun drawn" during the incident is assertedly new evidence. We conclude that under the applicable standards, Parks-Burns's declaration does not meet the standard for new evidence.

The trial evidence from two police officers and Lawrence was that the night of the incident, Lawrence and Thomas reported to police that Tibbs had used a gun. In closing arguments, defense counsel raised the possibility that Tibbs did not use a gun in the incident. The jury specifically found true an enhancement that Tibbs personally and intentionally discharged a firearm during the attempted murder. In light of the fact the issue was squarely before the jury, Parks-Burns's proffered declaration would do no more than sharpen a conflict in the trial testimony. It would add to Thomas's testimony that she did not remember a gun being used during the incident. But Parks-Burns's declaration does not point unerringly to Tibbs's innocence. Rather, the jury could

20

reasonably disbelieve it, and conclude it was self-serving because Parks-Burns had also been involved in the attempted murder incident. Accordingly, this declaration also provides us no basis to order an evidentiary hearing or grant habeas relief.

III. *Tibbs's Claim about the Gang Expert's Testimony Lacks Merit*

Tibbs contends the prosecutor's gang expert "improperly testified on an ultimate question of law regarding the applicability of the gang enhancement." Specifically, he maintains the prosecutor did not pose her question to the expert in the form of a hypothetical; further, the expert's testimony that the crime was gang related usurped the jury's function, and violated Tibbs's right to due process and a jury determination of his guilt.

The People argue Tibbs's claim is untimely, procedurally barred, and meritless as Tibbs did not object to the gang expert's testimony during the trial or raise it on direct appeal. The People alternatively argue any error was harmless because even if defense counsel had objected to the prosecutor's question that was not in the form of a hypothetical, the People would have simply restated the question and the gang expert's testimony would have been admitted. Thus, Tibbs fails to demonstrate that a more favorable outcome would have resulted absent any error.

Tibbs concedes in his traverse that defense counsel did not object to the gang expert's testimony at trial or raise the claim in *Tibbs I*. Nonetheless, he argues we should reach the merits of the claim because both trial and appellate counsel provided ineffective assistance of counsel. Tibbs further acknowledges the trial court did not apply this

21

enhancement for sentencing purposes; therefore, he raises this contention for purposes of federal review.

A. *Background*

At trial, the prosecutor asked the gang expert whether the altercation between Tibbs and the victim resulted from a "personal problem" between them, caused by Lawrence dating Tibbs's minor sister. The expert responded in the negative, elaborating: "The first statement that was made was a gang challenge—a common gang challenge that was issued by Mr. Parks-Burns challenging the victim as to saying 'where you from.' This is a typical gang challenge that's provided or issued by gang members on individuals that aren't from the neighborhood, where they may not recognize from being from the neighborhood. [¶] The second claim that was made was a statement that was taken from the victim stating that Mr. Tibbs had yelled out '18th Street' upon firing the shots from the firearm. This is another common gang term that's used to identify or show hey, this is who we are and this is what we're doing and this is where—what neighborhood you're in and by yelling '18th Street' that statement alone—the challenge of 'where you from'—that directly leads me to believe that this wasn't a personal beef between anybody. This was definitely a gang-related shooting that was purely for the benefit of the gang based on those statements that were made by both defendants to the victim prior to and during the shooting."

B. *Legal Principles*

The California Supreme Court has outlined several "procedural bars," limiting the availability of habeas relief: "Given the ample opportunities available to a criminal

22

defendant to vindicate statutory rights and constitutional guarantees, and consistent with the importance of the finality of criminal judgments, this court has over time recognized certain rules limiting the availability of habeas corpus relief.  Sometimes called 'procedural bars' [citations], these rules require a petitioner mounting a collateral attack on a final criminal judgment by way of habeas corpus to prosecute his or her case without unreasonable delay, and to have first presented his or her claims at trial and on appeal, if reasonably possible."  (*In re Reno* (2012) 55 Cal.4th 428, 452.)  Habeas corpus will not serve as a supplemental direct appeal "where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction."  (*In re Dixon* (1953) 41 Cal.2d 756, 759.)

We conclude that under the authorities cited above, Tibbs is not entitled to habeas relief because he failed to raise this claim in the trial court or on direct appeal.  In any event, Tibbs's ineffective assistance of counsel claim also fails.

"[A] criminal defendant is guaranteed the right to effective legal representation on appeal."  (*In re Sanders* (1999) 21 Cal.4th 697, 715-716.)  To be competent, appellate counsel must prepare a legal brief containing citations to the appropriate authority, and set forth all arguable issues but need not raise all nonfrivolous issues.  (*Ibid*.)  Even if Tibbs could demonstrate his appellate attorney acted unreasonably, he must still show prejudice, but he has not done so.  (*Smith v. Robbins* (2000) 528 U.S. 259, 285-286; *In re Harris, supra,* 5 Cal.4th at p. 833.)

" 'California law permits a person with "special knowledge, skill, experience, training, or education" in a particular field to qualify as an expert witness (Evid. Code,

23

§ 720) and to give testimony in the form of an opinion ([Evid. Code,] § 801). Under Evidence Code section 801, expert opinion testimony is admissible only if the subject matter of the testimony is "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (*Id.* at subd. (a).) The subject matter of the culture and habits of criminal street gangs . . . meets this criterion.' " (*People v. Vang* (2011) 52 Cal.4th 1038, 1044 (*Vang*).)

" 'When expert opinion is offered, much must be left to the trial court's discretion.' [Citation.] The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion." (*People v. McDowell* (2012) 54 Cal.4th 395, 426.) " 'Generally, an expert may render opinion testimony on the basis of facts given "in a hypothetical question that asks the expert to assume their truth." ' " (*Vang, supra,* 52 Cal.4th at p. 1045.) "Use of hypothetical questions is subject to an important requirement. 'Such a hypothetical question must be rooted in facts shown by the evidence.' " (*Ibid*.) Failure to object to a gang expert's testimony at trial forfeits any contention regarding that testimony on appeal. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 818-819.)

C. *Analysis*

Here, the People failed to pose their question to the gang expert in the form of a hypothetical. The normal manner of proceeding in such cases is to ask the expert witness a question based upon a hypothetical situation grounded in the facts of the case being tried. The better manner of proceeding here would have been to pose the question in the

24

form of a hypothetical that embraced the particular facts of the case, but did not directly refer to defendant. Nevertheless, the admission of such expert evidence is not necessarily error: "[N]o statute prohibits an expert from expressing an opinion regarding whether a crime was gang related. Indeed, [it] is settled that an expert may express such an opinion. To the extent the expert may not express an opinion regarding the actual defendants, that is because the jury can determine what the defendants did as well as an expert, not because of a prohibition against the expert opining on the entire subject. Using hypothetical questions is just as appropriate on this point as on other matters about which an expert may testify." (*Vang, supra*, 52 Cal.4th at p. 1052.)

At least one court has found the admission of an expert witness's opinion that the crimes of the particular defendants in question were committed for the benefit of the respective defendants' gangs, without the use of a hypothetical, was within the trial court's discretion. (*People v. Valdez* (1997) 58 Cal.App.4th 494, 509.) The court in *People v. Prince* (2007) 40 Cal.4th 1179 approvingly cited *Valdez* for this very point. (*Prince,* at p. 1227.) Likewise, the court in *Vang*, albeit in dicta, expressed support for that holding: "It appears that in some circumstances, expert testimony regarding the specific defendants might be proper." (*Vang, supra*, 52 Cal.4th at p. 1048, fn. 4.) Nonetheless, assuming error, we conclude it is not reasonably probable an outcome more favorable to defendant would have resulted in the absence of the expert's testimony. (*People v. Clark* (2011) 52 Cal.4th 856, 940-941 [error in admission of prosecution's expert witness testimony subject to *Watson* standard of harmless error]; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

25

IV. *Correction of the Abstract of Judgment*

The People concede, and we agree, the abstract of judgment should be amended. It is well settled that " '[a]n abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize. [Citation.]' [Citation.] When an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, this court has the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties." (*People v. Jones* (2012) 54 Cal.4th 1, 89.) Here, the court orally sentenced Tibbs to a 20-year determinate sentence and a 15-year indeterminate sentence. Nevertheless, the abstract of judgment erroneously reflects a determinate sentence of 26 years. We direct the trial court to correct this error on remand.

26

The petition for habeas corpus is granted as to Todd Jose Tibbs's claim that the abstract of judgment is erroneous. In all other respects the petition is denied. The trial court is directed to amend the abstract of judgment to reflect the trial court's oral pronouncement of judgment of a 20-year determinate sentence and a 15-year indeterminate sentence, and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.